## SMITH v. UNITED STATES.

### No. 49289.

United States Court of Claims.

Feb. 5, 1952.

Fred W. Shields, Washington, D. C., for the plaintiff. King & King, Washington, D. C., were on the briefs.

Ernest C. Baynard, Washington, D. C., with whom was Asst. Atty. Gen. Holmes Baldridge, for the defendant. Louis R. Mehlinger, Washington, D. C., was on the briefs.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

MADDEN, Judge.

The plaintiff, a commissioned officer in the United States Naval Reserve, was called to active duty on September 18, 1942, and served with the Service Forces of the United States Fleet from December 31, 1942, until midnight of November 11, 1945. On or about September 23, 1945, the plain-tiff received orders from the proper authority to report to a separation center at Los Angeles, California, for release to inactive duty. He reported there on October 5, and on October 6 was examined and found to be physically qualified for release from active duty. He was directed to proceed to his home at Pasadena, was given one month and six days terminal leave, and was directed to regard himself as released from all active duty at midnight, November 11, 1945, which was when his terminal leave would expire.

On November 11, he suffered a coronary occlusion. His family tried to get the separation center to admit him to a Government hospital, but did not succeed. However, on March 1, 1946, the Chief of Naval Personnel authorized the plaintiff to proceed at his own expense to the Naval Hospital, Long Beach, California, and report to the medical officer for a physical examination and for a report by a board of medical survey. The plaintiff spent about a month at the hospital and was discharged on April 24. On May 10 the Acting Secretary of the Navy authorized the plaintiff to proceed at his own expense to San Diego, California, and report to the president of the retiring board for examination for retirement.

On May 23, 1946, the Acting Secretary notified the plaintiff that his orders of September 23, 1945, were modified, and directed him "to continue on active duty pending final approval of the proceedings of the Naval Retiring Board." The letter said that the modification "was due to the fact that on 12 November 1945 you were reported to be not physically qualified for release to inactive duty." It directed him to proceed to Terminal Island, San Pedro, California, and report to the Commandant of the Naval Base there for "temporary duty" and await orders pending final action on the proceedings of the Naval Retiring Board. It is probable that the plaintiff did not report at the Naval Base, and that he did not do so because he would not have been able to perform any duties.

On July 26, the plaintiff appeared before a naval retiring board which found that he was permanently incapacitated for active

service, that his incapacity was a result of his naval service and was incurred in the line of duty. The action of the retiring board was in due course approved by the President on October 26, 1946. The plaintiff was, on November 25, 1946, notified that he had been placed on the retired list on November 1, 1946, in the rank of Lieutenant Commander, pursuant to the provisions of 34 U.S.C.A. §§ 417, 855c–1, and 350g(a). From that date the plaintiff received retired pay.

For the period November 12, 1945, to October 31, 1946, the plaintiff, though ultimately found to have been on November 12, 1945, permanently incapacitated as a result of his naval service, received no pay. It is apparent that if the medical officers of the Navy, when they examined the plaintiff on October 5, 1945, had discovered his physical condition, they would not have ordered his separation from the service. He would have been hospitalized, if that was indicated, and a retiring board would have recommended his retirement with pay, if they found, as such a board later did, that his disability was an incident of his service. He would have been kept on "active duty" in a hospital or elsewhere, until his retirement took effect, and would have received active duty pay. But, because it was not possible on October 5 to discover the plaintiff's true condition, he was ordered to be separated from the service, and from pay, on November 11.

When subsequent events showed what should have been done, the Acting Secretary attempted to do, retroactively, what would have been done if the facts had been known in time. He modified the orders for separation and "continued" the plaintiff on active duty until his retirement status could be determined. Our question is whether the Acting Secretary had the power to do what he attempted to do. The Government urges that he did not have that power. It says that the plaintiff was not, in fact, on active duty after November 11, 1945, and that the Acting Secretary could not change that fact by issuing an order. Our problem is not, however, a problem of *quantum meruit*, of how much useful service the plaintiff performed for

the Government during the period in question. As we have seen, if the plaintiff's true state of health had been known, he would have been continued on "active duty" until he was retired, but he would have performed no useful services. He would have been a liability to the Government, which would have paid for his hospitalization and treatment. Our problem is whether what the Government did, in understandable ignorance of the true state of health of this officer who had served it well, which it would not have done but for its lack of knowledge, could be retroactively undone, so that that could be done which should and would have been done if the facts had been known. We think that the Government, like other persons, natural and juristic, does have the power to thus correct what it has done in misapprehension of the facts. In short, it has the power to deal fairly with those who have served it.

The plaintiff is entitled to recover. Entry of judgment will be suspended to await the filing of a report from the General Accounting Office showing the amount due the plaintiff.

It is so ordered.

JONES, Chief Judge, and HOWELL, WHITAKER and LITTLETON, Judges, concur.