**FARM & HOME MODERNIZATION CORPORATION, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. No. 5452.

United States District Court
N. D. New York.

Jan. 9, 1956.

**424**

Alfonse Damico, Syracuse, N. Y., Joseph J. Lyman, Washington, D. C., for plaintiff.

Theodore F. Bowes, U. S. Atty., Syracuse, N. Y., H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe, Anthony T. Dealy, Attys., Dept. of Justice, Washington, D. C., Bernard Burdick, Asst. U. S. Atty., Syracuse, N. Y., for the United States.

BRENNAN, Chief Judge.

This action is brought to recover taxes paid by the plaintiff under the provisions of the Federal Insurance Contributions Act, Title 26 U.S.C.A. § 1400 et seq., and the Federal Unemployment Tax Act, Title 26 U.S.C.A. § 1600 et seq. The period involved in this litigation extends from June 30, 1950 through June 30, 1953. The taxes, for which recovery is sought, were computed and paid upon the earnings of certain workers who are termed "applicators" or "installers" in this litigation. The crux of the litigation is contained in the plaintiff's contention that the taxes, above mentioned, were paid under the mistaken impression that said applicators were employees as defined in Title 26 U.S.C.A. § 1426(d) and § 1607(i) when in fact they were independent contractors.

The status of several workers is involved in this suit. It seems to be conceded however that the evidence offered is to be applied as to each person upon whose earnings taxes were paid and that the decision will apply to each of them. In other words, the decision will define the status of the workers collectively rather than individually. Any computations made necessary by the decision are reserved to be agreed upon by the parties or determined by the Court.

A similar action was tried before this Court and decided in October 1954. The decision is reported under the name of Silver v. United States, 131 F.Supp. 209, 210, and the following paragraph is borrowed therefrom as an introduction to the findings herein.

"It is obvious that the decision here will require that the plaintiff's business methods and the facts pertaining to the business relationship of plaintiff and the applicators be examined and appraised. The evidence offered raises no serious factual dispute, and the findings of the

Court are set out below in narrative form."

The plaintiff corporation is and has been engaged in business at the City of Syracuse, N. Y. Its activities may be described generally as furnishing and applying roofing and siding materials to the roofs and outside walls of frame structures and installing storm windows therein. The plaintiff employed salesmen who obtained contracts generally from home owners for roofing and siding repairs and the installation of storm windows. The status of those persons who actually performed the labor called for by the contracts are involved in this litigation.

The men performing such labor in connection with roofing and siding materials are termed "applicators" and those engaged in the installation of windows are termed "installers". Inasmuch as there is no material difference in the business relationships of the plaintiff and the applicators and installers, the term "applicators" as used in this decision will apply to both classes unless otherwise noted.

After the contract is accepted by the company, estimates of the amounts of materials required and the number and size of windows to be installed are computed, a very general description of the work to be performed is outlined, all of which is set forth upon a work sheet. The unit used in computing the amount of materials is known as a "square" and consists of 100 square feet. Generally the materials were delivered at the job site by the plaintiff. On occasions the windows were transported to the work site by the applicator. The situation here differs in one respect from that encountered in other similar cases; that is the workers signed a written contract of employment.

Applicators were usually hired when they came to the company looking for work. The written contract was for all practical purposes abandoned or waived by the parties thereto. No contention is made that the obligations of the applicator as outlined in the written contract were required in the matter of the work performed over the period in litigation. The case was tried, briefed and submitted upon the theory that the relationship between the plaintiff and the applicator was determined by the actual manner in which the business between them was actually transacted. For all practical purposes, the requirements of the written contract were waived. It may be said however that the contract did not purport to control the details of the workers' performance and therefore does not bear upon the test as outlined in Radio City Music Hall Corp. v. United States, 2 Cir., 135 F.2d 715.

Each job was considered as a separate unit and the applicator received a work sheet described as above. It appears that the compensation of the applicator was fixed by a unit price per square or per window as determined by the trade for each season. However the price at least occasionally was the subject of negotiation at the time the work sheet was offered and prior to its acceptance. Extra work indicated thereon or distance indicated therein were the subject of negotiation. The unit price was not inflexible, large jobs being written at a lesser unit rate. In the event that the parties were unable to agree, occasionally provision was made for the performance of the work on an hourly basis. In other words, the price to be paid for the work indicated in the work sheets in this litigation was not inflexible but was subject to negotiation. The installer was free to reject the work sheet offered him and such rejections occurred in the cases of the majority of the applicator witnesses called upon the trial. No sanctions were invoked against the applicator because of such rejection. The applicators furnished their own tools and equipment. They provided their own transportation to the job site. They paid their own expenses in connection with the performance of each job. They occasionally reported the amount of such expense to the employer in order that same might be considered in connection with the computation of withholding taxes. No in-

structions were given the applicator as to the manner or method of the performance of the work. No inspections of the work were made by the plaintiff. If a complaint was received as to defective workmanship within a reasonable time after the completion of the work, the applicator was expected to repair same at his own expense. The plaintiff appeared to rely upon a completion slip signed by the owner upon the completion of the job to indicate a satisfactory performance thereof and also upon the experience of the applicator to insure the performance of the work in accordance with the contract. The applicator was free to hire helpers or assistants, the wages of such helpers to be fixed by the applicator himself. He was however required to report the name and the wage rate to the plaintiff in order to furnish information for tax purposes. No control over the work hours of the applicator was retained or exercised by the plaintiff. Neither was there a power of discharge over the applicator or his assistants, in accordance with the arrangement as actually carried out.

Payment was ordinarily made at or near the end of the work week for the work performed as reported by the applicator. Occasionally some applicators might perform some service for the plaintiff in its warehouse in the event of an emergency or when the weather prevented outside work. Such employment was generally fixed at a unit rate but one witness was paid on at least one occasion at an hourly rate. The estimate of the number of squares appearing on the work sheet was the measure of the applicator's total payment for the job. If the estimate called for 10 squares and only 8 were applied, the applicator would receive pay for 10. If the estimate called for 10 squares and actually 12 were applied, the applicator received payment for 12.

### Discussion

It would appear to be without profit to again discuss the statutes, regulations and decided cases which are referred to in the decision of Silver v. United States, supra. That decision indicates in sufficient detail the guides to the conclusion to be made here. In my opinion this case is a stronger case on the facts for the plaintiff than the Silver case and, assuming that the Silver case was correctly decided, then it controls here.

It is concluded that this Court has jurisdiction of the parties to and the subject matter of this action and that plaintiff is entitled to judgment as demanded in the complaint, such judgment to be prepared by the plaintiff upon computations to be made and if not agreed upon, same is to be settled on five days notice and it is

So ordered.