**E. F. WILLIAMS CO., Inc.,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

Civ. No. 5162.

United States District Court
N. D. New York.

Jan. 9, 1956.

Alphonse Damico, Syracuse, N. Y., Joseph J. Lyman, Washington, D. C., for plaintiff.

Theodore F. Bowes, U. S. Atty., Syracuse, N. Y., H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe, Anthony T. Dealy, Attys., Dept. of Justice, Washington, D. C., Bernard Burdick, Asst. U. S. Atty., Syracuse, N. Y., for defendant.

BRENNAN, Chief Judge.

This action is brought to recover taxes paid by the plaintiff under the provisions of the Federal Insurance Contributions Act, Title 26 U.S.C.A. § 1400 et seq. and the Federal Unemployment Tax Act, Title 26 U.S.C.A. § 1600 et seq. The period involved in this litigation extends from March 30, 1947 through March 31, 1951. The taxes, for which recovery is sought, were computed and paid upon the earnings of certain workers who are termed "applicators" in this litigation. The crux of the litigation is contained in the plaintiff's contention that the taxes, above mentioned, were paid under the mistaken impression that said applicators were employees as defined in Title 26 U.S.C.A. § 1426(d) and § 1607(i) when in fact they were independent contractors.

The status of several workers is involved in this suit. It seems to be conceded however that the evidence offered is to be applied as to each person upon whose earnings, taxes were paid and that the decision will apply to each of them. In other words, the decision will define the status of the workers collectively rather than individually. Any computations made necessary by the decision are reserved to be agreed upon by the parties or determined by the Court.

A similar action was tried before this Court and decided in October 1954. The decision is reported under the name of Silver v. United States, D.C., 131 F. Supp. 209, 210, and the following paragraph is borrowed therefrom as an introduction to the findings herein.

"It is obvious that the decision here will require that the plaintiff's business methods and the facts pertaining to the business relationship of plaintiff and the applicators be examined and appraised. The evidence offered raises no serious factual dispute, and the findings of the Court are set out below in narrative form".

The plaintiff corporation has been engaged in business at Syracuse, N.Y. for a number of years. During the period involved, its activities may be described generally as a roofing and siding business; that is furnishing and affixing materials to the exterior of roofs and sidewalls of frame structures. The plaintiff employed salesmen who obtained contracts from home owners for roofing and siding repairs. Inasmuch as the status of "roofers" only is involved in this case, reference will be limited particularly thereto.

After the contract is accepted by the company, estimates of the amounts of materials required are computed and a general description of the work to be performed is set forth upon a work sheet. The unit used in computing the amount of materials is known as a "square" which contains 100 square feet. The materials referred to in the work sheet are delivered to the job site by the plaintiff and about that time workmen, referred to herein sometimes as "applicators" but generally as "roofers" enter the picture. A roofer is a person who performs the labor of affixing the roofing materials to the roofs of the structures as indicated on the work sheet.

The arrangements between the plaintiff and the several roofers were entirely oral and lacked the formality of the ordinary contract. No discussion was had between the company and the roofer at the time the work sheet was handed to him. It appears that the compensation of the roofers was fixed by a unit price per square as determined by the trade for each season rather than by individual negotiations between the roofer and the plaintiff. The materials were furnished and delivered at the job site by the plaintiff. Scaffolding and the heavier equipment were furnished by the plaintiff. Each applicator furnished his own small tools. No time was set for the commencement or completion of the work indicated on the work sheet and the plaintiff exercised no control over the work hours of the roofer. Usually the roofer accepted the

work sheet handed to him although he was free to reject same and occasionally such rejection occurred although this situation was not common. In the event of a rejection, another work sheet was offered to the roofer. No instructions were given as to the method of the performance of the work indicated on the work sheet. Occasional visits to the job site were made by plaintiff's representatives. There is however no evidence of a discussion by such representatives of the manner or the method of the performance of the roofers' labor. It seems to be understood that same could ordinarily be performed only in a generally accepted manner so that active supervision of experienced personnel was not necessarily apparent. On at least 50% of the jobs, it became necessary by reason of conditions, to perform extra work. This was occasioned by unforeseen conditions existing upon the roofs and generally required repairs to the roofs themselves or to the gutters thereof. When such a condition arose, the roofer was instructed to and did contact the corporation office and except in minor matters, the work made necessary was generally compensated to the roofer on an hourly basis, the hourly rate for such service being agreed upon at the opening of each season. If helpers were desired or made necessary, the roofer conveyed such information to the plaintiff's main office and generally helpers were sent to the job site by the plaintiff, compensated at an hourly rate fixed entirely by the plaintiff and the helper. The total pay of the helper for each job was deducted from that earned by the roofer upon that particular job. The roofer had no control over the helper and in the event that his services proved unsatisfactory, he would be sent back to the office by the roofer.

Friday of each week was the regular established weekly payday for the roofers. A report of the work performed up to Wednesday evening of each week was turned into the office on Thursday and payment therefor was made on Friday. Advancements or loans were occasionally made upon specific request. Each roofer was paid upon the basis of the number of squares actually applied. The estimate of the number of squares required appearing on the work sheet was not the measure of the roofer's earnings. Large roofing jobs and jobs which required the application of such materials as liquid or hot tar were generally performed by a crew of roofers and paid for at an hourly rate.

In this case, three roofers testified as witnesses, one in behalf of the plaintiff, the other two as defendant's witnesses. Each of said roofers had worked for the plaintiff for a period from twenty-four to twenty-seven years. Their services have been continuously rendered except during the season of the year when it was impractical to perform same, when other employment was temporarily obtained.

Plaintiff's manager assumed that the right to discharge a roofer rested with the management. The roofer, Friol, called as a witness for the plaintiff, had a similar understanding. At least one of the remaining two called by the defendant considered himself as an employee.

## Discussion.

It would appear to be without profit to again discuss these statutes, regulations and decided cases which are referred to in the decision of Silver v. United States, supra. That decision indicates in sufficient detail the guides to the conclusion to be made here.

Assuming that the Silver case was correctly decided and that the same general situation is involved, a similar decision does not necessarily follow because of factual differences. The manner of allotting the work to be performed is similar but the pressure upon the roofer to accept same seems to be more evident in this case. This situation is expressed in the language of plaintiff's own witness, Friol, "we have to take the good with the bad". In this case the right to dismiss a roofer is assumed to exist by both management and the roofers themselves. Although there is no evi-

dence to show that such right was exercised, it is the existence of same rather than its use which carries weight. Here we also have the furnishing of a portion of the necessary equipment to the roofer by the plaintiff. The establishment of a definite weekly payday, without regard to the amount of work performed is a trademark of employer-employee relationship. Here also we have definite evidence of the frequent co-mingling of services performed on a unit price basis and that performed upon an hourly basis. This item in this case was definitely not a minor one. While the roofer here might recommend a helper or an assistant, he could not hire one. The furnishing of helpers and the fixing of their rate of pay was entirely the plaintiff's prerogative. Perspective job prospects and inquiries relative to extra work made to the roofer were required to be referred to the plaintiff.

In arriving at the decision here, I have in mind that "It is the total situation that controls". Bartels v. Birmingham, 332 U.S. 126, at page 130, 67 S.Ct. 1547, at page 1550, 91 L.Ed. 1947. It follows that such decision may not be arrived at by attempting to isolate and appraise each element which indicates the existence of the specific relationship between the plaintiff and the roofers. Separately considered, they may be unimportant but when considered altogether, they assume weight which may not be ignored.

All of the circumstances from the time the roofer is assigned his work sheet down to the time he receives his final payment therefor are indicative of a control imposed upon the roofer by the plaintiff and accepted by him. The lack of evidence showing the exercise of control over the manner of the performance of the roofer's work to me is without great weight because it appears that same can only be performed by an experienced roofer in a manner which is generally acceptable. The lack of evidence showing the exercise of control of the hours of the roofer's labor also in my opinion loses its weight when

we invoke the standard of "economic reality". The result to be accomplished requires the application of physical work and therefore the time element is involved. Like the pieceworker, this can safely be left to the experienced roofer who may so budget his time as to afford him a reasonable return. The broad right to discharge asserted here by the plaintiff and recognized by the worker is indicative of a right of control of both the details and time of performance. That such right was not exercised is no answer; it is the existence of the right which controls.

It is concluded that the plaintiff has failed to sustain the burden imposed upon him that the roofers, involved in this litigation, were in fact plaintiff's employees during the period in dispute and it is further concluded that plaintiff has failed to establish the claim as set forth in the complaint and that same should be dismissed. Judgment is directed accordingly and

It is so ordered.