**SECURITY ROOFING & CONSTRUCTION CO., Inc.,**

**v.**

**UNITED STATES of America.**

**Civ. A. No. 57-822-A.**

United States District Court
D. Massachusetts.

June 27, 1958.

Ashley W. Rice, Lynn, Mass., Joseph J. Lyman, Washington, D. C., for plaintiff.

Andrew A. Caffrey, Asst. U. S. Atty., Boston, Mass., for defendant.

ALDRICH, District Judge.

The plaintiff sues for the recovery of taxes paid under the Federal Insurance Contributions Act, § 1400 et seq., Internal Revenue Code of 1939 (now 26 U.S. C.A. § 3101 et seq.) and under the Federal Unemployment Tax Act, § 1600 et seq., Internal Revenue Code of 1939 (now 26 U.S.C.A. § 3301 et seq.). The taxes were paid on account of certain workers, known as applicators, who install roofing and siding materials. The sole question is whether the applicators were employees or independent contractors. Internal Revenue Code of 1939, §§ 1426(d) and 1607(i), 26 U.S.C.A. §§ 1426(d), 1607(i) (now Internal Revenue Code of 1954, §§ 3121(d) and 3306(i), 26 U.S. C.A. §§ 3121(d), 3306(i)). This question was decided against the government on similar facts in two cases within this circuit, Metropolitan Roofing & Modernizing Co. v. United States, D.C.D. Mass., 125 F.Supp. 670, and Jagolinzer v. United States, D.C.D.R.I., 150 F.Supp. 489. The government raises it again. In spite of the great respect I have for my brethren I feel constrained to reconsider it.

The plaintiff is engaged in the business of furnishing and applying roofing and siding materials. Its salesmen solicit orders and make contracts with individual homeowners at an agreed price. A work delivery sheet is prepared for the job, which contains the name and location, the specifications of the work to be done, and an estimate of the number of "squares," or area, to be covered. The job is offered to an applicator, who is given the worksheet and is usually shown the job by the salesman or by a supervisor. An applicator is free to take a job or not to take it. However, in the great majority of instances each job is accepted as offered. The applicator may choose his own hours, and is not obliged to work exclusively for the plaintiff, or steadily on any particular job, but again, it appeared that applicators work full hours, and customarily devote most of their efforts to the plaintiff's work over a substantial period. Unlike ordinary itinerant workers, applicators do not hold themselves out to the public in that capacity. If a customer requests additional work, or other work, such as carpentering, or if a problem arises in the course of peforming a job, the applicator must notify the plaintiff before undertaking it. If an applicator receives inquiries from passers-by while working on a job, he is to refer them to the plaintiff.

An applicator is paid strictly on an area basis, at a fixed rate per "square." It is a going rate and does not vary between roofers in a given locality, or between applicators by reason of any special skill. Except in unusual circumstances, all jobs pay the same rate regardless of their difficulty. The applicator supplies his own hand tools. The plaintiff furnishes the materials. It also usually supplies the staging and ladders. If the applicator uses his own staging he receives additional compensation. The plaintiff cleans up after the job, and attends to collecting from the customer. A sign is usually posted at the site stating that the plaintiff is doing the work.

The fundamental factor in determining whether the applicators are employees or independent contractors is the degree to which the plaintiff has the right to control and direct them, not only as to the result to be accomplished by the work, but also as to the details and the means by which that result is accomplished. See, e. g., Treasury Regulations 128, § 408.204 (now 26 C.F.R. § 31.3121 (d)); Restatement of the Law of Agency, § 220, comment c. The plaintiff contends that its only interest is that the job be properly accomplished. In a sense this is so as to any work for which the performer is paid by the piece. Although it is true that the applicator is normally unsupervised, he is checked on from time to time, particularly if he is new to the plaintiff and his ability has not been demonstrated. If he needs any instruction, as, for instance, in how to

conserve material, or how to apply a new material, he receives it. After this, the work being largely routine, supervision is unnecessary. I do not regard its absence of controlling significance. One can be an employee even though he supervises himself as to details. Cf. Ringling Bros.-Barnum & Bailey Combined Shows, Inc., v. Higgins, 2 Cir., 189 F.2d 865. The question is not so much one of whether the person for whom the work is being done finds it necessary to intervene and supervise the details of the performance, but whether it is understood that he has the right to do so. Cf. E. F. Williams Co. v. United States, D.C.N.D. N.Y., 139 F.Supp. 875, 878. A number of indications of the right to control the applicator's physical activities appear in this case. The plaintiff can take an applicator off one job and move him to another. On occasion it splits a team which is working on one job and sends one of the men to take care of some other work. If extra work arises in the course of performing a job, the applicator is required to ask the plaintiff for instructions and can not contract with the homeowner to do the work on his own. Of particular importance is the fact that an applicator can be discharged at any time for cause, such as unsatisfactory work, or conduct offensive to a homeowner which would be harmful to the plaintiff's good will. Compare Ben v. United States, D.C.N.D.N.Y.. 139 F.Supp. 883, 886, affirmed 2 Cir., 241 F.2d 127, with Farm & Home Modernization Corp. v. United States, D.C.N.D.N.Y., 138 F.Supp. 423, 426.

The plaintiff points to the fact that the applicator is paid by the job as indicating that it is interested only in the over-all results. However, if applicators request it, and they normally do, they are paid every Friday by way of an "advance" proportionate to the work already done. Nor do I consider it controlling that the applicators are free to work for other contractors. Many employees do the same. As for the fact that they set their own hours, I find that as a practical matter applicators work regular and full hours like anyone else. This "freedom not to work" is economically of little consequence. Cf. Restatement of the Law of Agency, § 220, illustration 7.

In addition to the factors already mentioned, the plaintiff supplies a place of work to the degree possible considering the nature of the work. The plaintiff's salesmen obtain the contracts with the homeowners and when the applicators are assigned to a job, they go there for the purpose of carrying out the plaintiff's business. Although the applicators furnish their own hand tools, I might take notice that many skilled laborers do the same. It is essentially plaintiff's work, not the applicator's, that is being done.

While there are undoubtedly factors present which are normally indicia of an independent-contractor status, the situation must be regarded as a whole. Sen. Rep. No. 1255, 80th Cong., 2d Sess., 2 U.S.Code Cong.Serv.1948 at 1769; Bartels v. Birmingham, 332 U.S. 126, 130, 67 S.Ct. 1547, 91 L.Ed. 1947. It seems to me that the indicia of ordinary employment far outweigh those tending in the opposite direction. The complaint is dismissed.