METROPOLITAN ROOFING & MODERNIZING COMPANY, Inc.,

v.

UNITED STATES of America.

Civ. A. No. 53–944–F.

United States District Court
D. Massachusetts.

Nov. 17, 1954.

Benjamin Nesson, Boston, Mass., for plaintiff.

Anthony Julian, U. S. Atty., Arthur I. Weinberg, Asst. U. S. Atty., Boston, Mass., for defendant.

FORD, District Judge.

Plaintiff in this action seeks to recover, together with interest and costs, certain taxes alleged to have been erroneously paid. The taxes in question are taxes paid on the earnings of certain applicators for the period from September 30, 1947 to March 31, 1951, under the Federal Insurance Contributions Act, 26 U.S.C.A. § 1400 et seq., and the Federal Employment Tax Act, 26 U.S.C.A. § 1600 et seq. Plaintiff made timely claim for refund of these taxes. Its claim was allowed with respect to taxes paid on the earnings of certain salesmen, but denied with respect to taxes paid on the earnings of the applicators. These latter taxes, in the amount of $1,365.29, are the subject of the present action.

The claim for refund is based on plaintiff's contention that these applicators were not employees of plaintiff within the meaning of 26 U.S.C.A. § 1426(d), on whose earnings plaintiff was liable for a tax. The pertinent portion of § 1426(d) (2) defines employee as "any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee".

Plaintiff is a corporation engaged in the business of repairing and modernizing dwelling houses and other buildings, chiefly by means of the application of roofing and siding. Contracts for the performance of this work are obtained by certain salesmen, and the actual work is done by the applicators.

An applicator reported to plaintiff's office and was given a work order for a particular job. This order listed the work which the contract provided should be done. Plaintiff supplied the materials to be applied and provided the necessary staging and ladders. These were all delivered by plaintiff to the site where the work was to be done, and plaintiff removed the equipment and any unused material after the work was completed. The applicator provided his own tools, consisting of an ordinary kit of carpenter's tools such as hammer, saw, knife, shears, level, and crowbar.

There were no specified working hours. Each applicator worked such hours as he wished. An applicator could and sometimes did take a whole day off when he desired. An applicator's travel to and from work was at his own expense.

Payment for the work was made on the basis of a fixed rate for each unit or square of roofing or siding applied, a

square being an area of approximately four feet by four feet. Certain jobs were known as "cut up" jobs, i. e., jobs in which the presence of irregularities, such as gables or dormer windows required extra work in cutting and fitting material. Such a surface took longer to cover than an equivalent flat area. In such cases the applicator received additional compensation for the extra time required. The amount of this compensation was determined in each case by direct negotiation between the applicator and the superintendent. When a particular job was finished, and the applicator had obtained the signature of the building owner to a completion certificate, he could immediately receive all money due him for that job. In the meantime he could draw a partial payment each week for the work done on the job still to be finished. This payment was based on his own statement as to how many squares he had applied during the week.

Plaintiff had a superintendent who assigned work to the various applicators, and saw that materials and equipment were moved to and from the various jobs. He gave no instructions to the applicators other than what was contained on the work sheet. He visited the job sites from time to time to see that work was done in accordance with the contracts. During the course of a job requiring several weeks work he might visit two or three times. Often he did not visit the shorter jobs at all. In the case of a newly engaged applicator he would visit the job more frequently for a few days until he was satisfied that the man was doing the work properly. When he occasionally found work done which he felt did not conform to contract requirements, he would require the applicator to do it over. For this the applicator received no additional pay.

When an applicator finished work on one job he ordinarily reported to plaintiff's office and received an assignment to a new one. There was, however, no agreement that he was to be given any new job, and there was no agreement that he would continue to do work regularly for plaintiff. Applicators could and sometimes did do work for others between work assignments from plaintiff. An applicator who did not like any particular assignment given him was free to refuse it. In such cases the superintendent tried to find him another job which he would be willing to accept. On longer jobs the plaintiff preferred to assign the work to two or more men, but it was for each applicator to decide whether he would work alone or work with other applicators.

■ Under the statutory definition the usual common law rules are to be applied in determining whether an individual is an employee. While the question of the existence of an employer-employee relationship must be decided on the basis of all the factors involved, the generally accepted and fundamental test is whether there exists a right to control the activities of the alleged employee, not only as to the results to be attained but also as to the manner and method of attaining the result. Party Cab Co. v. United States of America, 7 Cir., 172 F.2d 87, 10 A.L.R.2d 358; McGowan v. Lazeroff, 2 Cir., 148 F.2d 512; Radio City Music Hall Corp. v. United States, 2 Cir., 135 F.2d 715; Anglim v. Empire Star Mines Co., Ltd., 9 Cir., 129 F.2d 914; Crossett Lumber Co. v. United States, D.C., 79 F.Supp. 20; Kentucky Cottage Industries, Inc., v. Glenn, D.C., 39 F.Supp. 642. The same test is adopted in the applicable Treasury Regulations, which provide, 26 C.F.R. § 403.-204(b), "Generally such relationship [of employer and employee] exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. * * *." While the decision in United States v. Silk, 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757, might indicate that a somewhat broader definition of employee should be adopted, it is significant that the common law definition was written into the statute by Congress for the first time in 1948, after the decision in the Silk case.

In the present case plaintiff's only control over its applicators was as to the results of their work. It required only that a result be attained which would meet the requirements of its contract with the building owner. The applicator decided when he was to work and how he was to work. He received no detailed instructions. The superintendent's inspections were concerned only with determining whether the desired result had been achieved, and he interfered only when the result attained by the applicator was not in satisfactory compliance with contract requirements. Moreover, plaintiff could not even direct the applicator to perform any particular job unless he was willing to take the assignment. Since this was the uniform relationship which existed between plaintiff and its applicators over the whole period involved here, it must be concluded that the contractual relationship between them was understood by them as giving plaintiff only the right to control the applicators as to the results of their work and not the right to direct them in the means and methods by which the result was to be accomplished. The applicators had the status of independent contractors and were not employees of plaintiff within the meaning of the statute. The plaintiff was not subject to the payment of taxes on their earnings and is entitled to recover the taxes paid as having been paid erroneously.

Judgment for plaintiff.