**BONDED INSULATION & CONSTRUCTION COMPANY, Inc.,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

Civ. A. No. 584–54.

United States District Court
D. New Jersey.
April 13, 1955.

Kaplan & Stier, by Harold L. Kaplan, Bloomfield, N. J., Joseph J. Lyman, of counsel, Washington, D. C., for plaintiff.

Raymond Del Tufo, Jr., U. S. Atty., Newark, N. J., by George J. Rossi, Asst. U. S. Atty., Newark, N. J., Robert Weinstein, Dept. of Justice, Washington, D. C., for defendant.

MEANEY, District Judge.

This is an action for the recovery of federal insurance contributions taxes and federal unemployment taxes for the taxable period June 30, 1947 through June 30, 1951, in the total amount of $3,012.15.

The taxes in question are taxes paid to the United States on the earnings of certain workers called "insulators" and "carpenters", under the Federal Insurance Contributions Act, 26 U.S.C.A. § 1400 et seq., and the Federal Unemployment Tax Act, 26 U.S.C.A. § 1600 et seq.

This claim of refund is based upon the contention that these insulators and carpenters were independent contractors and not employees of the plaintiff within the meaning of §§ 1426(d) and 1607(i) of Title 26 of the Code and, therefore, plaintiff was not liable for a tax on their earnings, and that the assessments which form the basis for the collections were erroneously made.

The pertinent portions of these statutory subsections define an employee as one who, under the usual common law rules applicable in determining an employer-employee relationship, has the status of an employee.

Testimony relating to this claim was heard by the court sitting without a jury on March 2, 1955.

### Findings of Fact

1.  The plaintiff is a New Jersey corporation engaged in the business of repairing, insulating and modernizing dwelling houses and small buildings, and was so engaged during the taxable years in question. Morris Goodman is its president and active managing head.

2.  Contracts for the performance of this work were obtained through solicitation by corporate salesmen, and the actual work was done by insulators and carpenters. When a corporation undertook a contract, it took into consideration in reaching the gross contract price the cost of material, labor, overhead, salesmen's commissions, and the corporation's profits.

3.  The corporation undertook home repair and reconstruction work as well as insulation. Repairs and reconstruction were done by carpenters. These carpenters got written work orders. Insulators got written instructions from the corporation on what work was to be done.

4.  No foreman was over either type of worker to direct him or tell him what to do.

5.  The workers used the company's truck and machinery in repairing and insulating, and utilized a few tools of their own, such as chisels, hammers, plumb bobs, snips and saws.

6.  Each job had a separate work sheet and when there was no work sheet at the office upon the worker's arrival, he went home. If there was any misunderstanding about the work sheet, the men would call Goodman for an explanation.

7.  The plaintiff paid both carpenters and insulators by the hour, and if a worker worked two hours he was paid for two hours; if he worked four hours he was paid for four hours, etc. Workers

were paid once a week on every pay day. They were not paid for time they did not work.

8. Time was kept by punching a time clock, and there was no set time a worker had to be back after he had punched out. The worker would, however, estimate how much time a job would take, including travel to and from work, and also about how much material would be needed. This material was furnished by the company, together with ladders, scaffolding, heavy drills, etc.

9. The worker would introduce himself to the home owner as working for the plaintiff. Several men would work together on a job.

10. The plaintiff could discharge a worker at any time.

11. There was no written agreement of employment between worker and company, and the worker never refused any job offered by the company.

12. In the event there developed a complication on the job, the president of the company, Goodman, would be notified so as to give directions. Goodman occasionally told the workers to correct certain work done. A worker could not do any additional work without instructions from Goodman. If mistakes were made, complaint was made to Goodman, and Goodman would tell workers to correct them. If there was any misunderstanding about a work sheet, the men would call Goodman for an explanation.

13. No special time was set for the completion of work except that it was expected to be done by the time general work of that type would be done. If there was a rush job some place else, the workers might be called off a job to help out.

14. There was no arrangement about whether a worker was to receive work steadily. No arrangement was made for guaranteeing jobs for any period of time.

15. The plaintiff had a list of eight or ten carpenters and a list of insulators upon whom it called whenever jobs were available. Certain of these men were preferred when only a few were needed

for an assignment. All had been trained by Goodman and fellow workers.

16. The plaintiff carries public liability insurance.

### Discussion

The fundamental question here involved is whether the insulators and carpenters are employees or independent contractors within the meaning of the Federal Insurance Contributions Act and the Federal Unemployment Tax Act. If the latter, then plaintiff should prevail. If the former, then the taxes were not erroneously assessed and collected, and judgment should be entered for the defendant.

In Levin v. Manning, D.C., 124 F.Supp. 192, this court cited a portion of the opinion of Judge Goodrich in National Labor Relations Board v. Nu-Car Carriers, 3 Cir., 189 F.2d 756, 757, regarding the common-law concepts governing the determination of independent contractor or employee. Judge Goodrich, in holding certain persons to be employees stated: " * * * 'The important distinction is between service in which the actor's physical activities and his time are surrendered to the control of the master, and service under an agreement to accomplish results or to use care and skill in accomplishing results.' Restatement, Agency § 220 (1933). We may add to this Judge Learned Hand's statement: 'The test lies in the degree to which the principal may intervene to control the details of the agent's performance; and that in the end is all that can be said * * *.' Radio City Music Hall Corp. v. United States, 2 Cir., 1943, 135 F.2d 715, 717."

In Levin v. Manning, supra, 124 F. Supp. at page 194, this court, in its interpretation of Judge Goodrich's opinion, held that the employer exercised no control over the selection of helpers, nor did he control the number that could be hired. The court concluded by saying, "These factors indicate control of results, not of details." Consequently, the taxes were found to be erroneously assessed.

The case at bar is to be distinguished from the case of Levin v. Manning, supra. In that case construction contractors submitted bids for work which, when accepted, became the contract price. The contractors hired and paid for their own helpers, and the taxpayer had no control over the selection, dismissal or compensation of those helpers the contractors hired. No transportation was furnished by the taxpayer, there were no set times for the contractors to be on the job, the contractors furnished their own tools and were allowed to and did work for others than the taxpayer. With the exception of paint, however, plaintiffs furnished the materials to be used in performing the work.

In the case at bar the workers were not hired as possessed of a certain skill in their craft. They came to the plaintiff inexperienced, untrained, and unskilled. Working under the guidance and direction of Goodman they acquired a certain facility in their work. Moreover, the workers followed no independent trade, business or profession, nor offered their services to the public. Their work was exclusively for the plaintiff over an extended period of time.

Hammerstrom v. United States, D.C. S.D.Fla., decided February 14, 1955, is similar to the factual situation at bar. Workers did flooring and acoustical ceiling work for the plaintiff taxpayer. When a job was ready, the company issued a work ticket to the mechanic assigned to the job, who would then see what materials and tools were necessary. He would take these from the company warehouse, load them onto his truck and go to the job site. The company had the authority to control the men and could withdraw them from the job and assign them to another. From this evidence the court determined that they were employees and not independent contractors. It recognized the power of control inherent in the continuity of the method of giving out the work tickets, and the right to withhold further tickets from the worker.

In the instant case the workers, while liable for results, could still be withdrawn from a job at any time. Moreover, they would consult with the president of the plaintiff corporation, Morris Goodman, when a problem arose from a particular job, or if the work was complicated. They acquired their skills only after training by Goodman and their fellow workers. Remuneration was on an hourly basis as determined by a time clock. Goodman assigned the workers to each job and could dismiss any or all of them at any time.

All of these factors indicate control not only of results but of the job itself.

None of the cases cited by the plaintiff is deemed by the court to be pertinent. In two of the more recent cases cited by the plaintiff Silver v. United States, D.C. N.D.N.Y., 131 F.Supp. 209, and Metropolitan Roofing & Modernizing Co. v. United States, D.C.Mass., 125 F.Supp. 670, a relatively complete amount of independence was exercised by the workers as to the details of their work.

The facts here in issue reveal no such freedom or independence. Cf. New Deal Cab Co. v. Fahs, 5 Cir., 174 F.2d 318.

## Conclusions of Law

1. This court has jurisdiction of the parties and of this action. See 28 U.S. C.A. § 1340.

2. The persons in question were employees and not independent contractors within the meaning of § 1426(d) and § 1607(i) of Title 26.

3. The taxpayer is not entitled to recover the taxes paid by reason of the employment of the insulators and carpenters.

4. The costs of this action should be taxed by the clerk against the plaintiff.

Let an order in conformity with these findings and conclusions be submitted.