**Julian J. LOEB, t/a National Roofing and Siding Company**

v.

**UNITED STATES of America.**

**Civ. A. No. 6491, Division "C".**

United States District Court
E. D. Louisiana,
New Orleans Division.

Sept. 12, 1962.

Henry F. Yoder, New Orleans, La., for plaintiff, Joseph J. Lyman, Washington, D. C., of counsel.

Jerome J. Reso, Jr., Tax Div., Dept. of Justice, Kathleen Ruddell, Edwin M. Sigel, Asst. U. S. Attys., New Orleans, La., for defendant.

WEST, District Judge.

### REASONS FOR JUDGMENT

This is an action to recover certain employment taxes alleged to have been erroneously paid by the plaintiff under the provisions of the Federal Insurance Contributions Act, 26 U.S.C.A. § 3101 et seq., and the Federal Unemployment Tax Act, 26 U.S.C.A. § 3301 et seq. The controversy involves the question of wheth-

er or not certain mechanics called "applicators", whose function it was to apply siding on the exterior walls of buildings, were employees of the plaintiff within the meaning of Sections 3121(d) and 3306(i) of the Internal Revenue Code of 1954. After hearing the evidence, and after a careful study of the exhaustive briefs submitted by able counsel for both parties, the Court concludes that these applicators were not employees of the plaintiff within the meaning and intendment of the pertinent provisions of the Internal Revenue Code of 1954, and in connection with this conclusion, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

### 1.

Plaintiff is an individual doing business as National Roofing and Siding Company in and around New Orleans, Louisiana. His business, among other things, includes selling and installing, siding on the exterior walls of houses and buildings pursuant to contracts entered into with the building owners.

### 2.

Plaintiff employed salesmen who solicited business from among home owners in the area. These salesmen examined the houses to be repaired or renovated, and then negotiated with the owner for the siding work. If negotiations were successful, contracts were entered into between the home owner and the plaintiff for the furnishing and application of the siding for a stated price.

### 3.

In addition to employing salesmen, whose status as employees is not at issue here, plaintiff also employed office help, maintenance men, roofers, sheet metal workers, etc., none of whose status as employees of the plaintiff are at issue here.

### 4.

After a contract was entered into a "work sheet" for the application of siding was prepared in the company office, containing a detailed description of the siding job. Its function was to guide the siding applicator in applying the siding in accordance with the terms of the contract. The work sheet did not, however, contain any specific directions as to the manner of actual application of the siding, this being left entirely to the judgment and skill of the applicator.

### 5.

The applicators are the individuals who actually apply or install the siding on the walls of the building or structure, and it is the status of these applicators that is at issue in this suit.

### 6.

The plaintiff had some applicators on his regular payroll who were paid a regular weekly wage, regardless of the amount of work they did, and their status as employees is not at issue. There were other applicators, however, who were hired for specific jobs and paid on a "piecework" basis, the amount of such pay being based upon the number of squares (100 square feet) of siding to be applied as set forth on the work sheet. It is the status of these "piecework" applicators that is at issue here. The plaintiff contends that these applicators are not employees within the meaning or intendment of the Federal Insurance Contributions Act and the Federal Unemployment Tax Act, but that they are, on the contrary, independent contractors. The defendant, on the other hand, contends that these applicators are employees within the meaning and intendment of those two taxing statutes.

### 7.

During the period January 1, 1952 through September 30, 1954, the plaintiff paid employment taxes to the United States Government on the earnings of these applicators pursuant to the provisions of the Federal Insurance Contributions Act, 26 U.S.C.A. § 3101 et seq., and the Federal Unemployment Tax Act, 26 U.S.C.A. § 3301 et seq., and now seeks a refund of these taxes on the basis that the applicators in question were not, in

fact, employees of the plaintiff, and hence, these taxes were paid in error.

8.

The only issue involved is whether or not these particular applicators, who were paid by the job rather than on a weekly basis, were employees of the plaintiff within the purview of the Federal Insurance Contributions Act and the Federal Unemployment Tax Act.

9.

The plaintiff kept on file a list of names, addresses, and telephone numbers of several qualified siding applicators whom he could, and did, call upon when he had a siding job to be performed. Plaintiff also, on occasions, advertised in the newspapers for experienced applicators.

10.

The number of applicators performing work for the plaintiff varied from time to time, from as few as two, up to as many as twenty-four according to the volume of work produced by plaintiff's salesmen.

11.

There was never any written contract between these applicators and the plaintiff, but on the contrary, work was performed pursuant to oral agreement only. The amount of compensation was fixed at a pre-determined rate according to the number of squares of siding to be applied. In some instances payment to the applicator was made by the plaintiff in a lump sum upon completion of the particular job involved, and in other instances, the applicators were allowed weekly advances to be applied against the total amount to become due at the completion of the job. If it developed that the job required extra work because of some unforeseen irregularity, additional compensation was paid the applicator by the plaintiff after discussions and negotiations were held concerning the extras. Also, if the job was outside of the radius of eighty miles from New Orleans, the applicator was paid at a higher rate per square.

12.

There were no specific instructions or agreements between the plaintiff and the applicators as to how the work was to be performed, nor the time within which it was to be completed. While the services performed by the applicators were an integral part of the plaintiff's business, all of the details as to the manner in which the work was to be performed were left entirely up to the applicators who were all experienced in that line of work, and upon whose experience and capabilities the plaintiff relied.

13.

If an applicator was presented with a work sheet for a job, and for some reason or other he did not care to do that particular job, he could, and did on occasions reject the job. Even though he rejected a job, it was not unusual for the plaintiff to use him for other jobs more acceptable to him.

14.

Applicators were not required to work exclusively for the plaintiff, but they did, in fact, also do siding work for other home improvement firms in the area.

15.

There was never any guarantee of continued employment given to the applicators. They were hired for a specific job only, and when that job was completed, the plaintiff might or might not offer them additional work.

16.

The applicators could, and did, at their own expense, hire other applicators and helpers of their own choice to assist them in their work on particular jobs without the necessity of any approval by the plaintiff.

17.

All materials for the job were furnished and delivered to the job site by the plaintiff, but each applicator furnished his own transportation and tools.

18.

The plaintiff carried public liability insurance and workmen's compensation insurance on these applicators.

**19.**

The applicators determined their own hours of work, and determined what days they would work on a particular job, subject to no apparent control or approval by the plaintiff.

**20.**

While there was no actual written agreement between the plaintiff and the various applicators, nevertheless, it seems to have been generally understood that if the applicator was not applying the siding in accordance with the contract between the owner and the plaintiff, the plaintiff could certainly have insisted that the necessary changes be made by the applicator so that the contract would be complied with. As a matter of fact, plaintiff did employ a field supervisor or work expediter whose job it was to see that the work was being performed properly and in accordance with the contract. This supervisor visited the job daily, and made arrangements for getting the materials to the job site, answered customers complaints, made necessary financial arrangements for extra work to be performed, and reported to the plaintiff any faulty or improper work being performed by the applicators. Neither the plaintiff nor his supervisor nor work expediter in any way exercised control over the manner in which the work was performed by the applicator, except to see that the job was finally completed to the satisfaction of the customer.

**21.**

If an applicator did not perform the work of applying the siding to the satisfaction of the plaintiff and the plaintiff's customer, he, the applicator, simply was not called upon any further by the plaintiff. The applicator was responsible at his own expense to correct any faulty work discovered after completion of the job.

**22.**

It was stipulated between counsel that if it was found that the plaintiff should recover in this action, the amount of money to be refunded would be determined by the defendant and submitted to the plaintiff for approval. If, however, the parties could not then agree upon the proper amount to be refunded, each party reserved his right to present the question of amount to this Court for further determination.

## CONCLUSIONS OF LAW

**1.**

This Court has jurisdiction of the parties and the subject matter involved in this action, this being a claim for a refund of taxes alleged to have been erroneously paid by the plaintiff to the United States Government.

**2.**

Under the provisions of Section 3121 (d) of the Internal Revenue Code of 1954, a person is an employee, for the purpose of the Federal Insurance Contributions Act, if, "under the usual common law rules applicable in determining the employer-employee relationship" he has the status of an employee.

**3.**

Under the provisions of Section 3306 (i) of the Internal Revenue Code of 1954, a person is not an employee if "under the usual common law rules applicable in determining the employer-employee relationship" he has the status of "an independent contractor".

**4.**

In determining whether, under the common law test, an individual is, for taxing purposes, an employee or an independent contractor, the decisions of the Federal Courts, rather than those of the various States, must be controlling. Williams Packing and Navigation Co., Inc. v. Enochs, D.C., 176 F.Supp. 168, affirmed 5 Cir., 291 F.2d 402; Crossett Lumber Co. v. United States, D.C., 79 F.Supp. 20.

**5.**

The common law test of the employer-employee relationship lies mainly in the degree to which the principal may intervene to control the details of the agent's performance. Generally speaking, an employer-employee relationship

exists when an employee is subject to the will and control of the employer not only as to what shall be done, but how it shall be done. It is true that in order for an employer-employee relationship to exist, it is not necessary that the employer actually direct the specific method of performing the work, but it is sufficient if he has the right to do so. Treasury Regulation on Employment Taxes (1954 Code), Section 31.3121(d) (1) (c) (1); Radio City Music Hall Corp. v. United States, 2 Cir., 135 F.2d 715.

### 6.

Whether or not the relationship of employer and employee exists under the usual common law rules will, in doubtful cases, be determined upon an examination of the particular facts of each case. Treasury Regulation on Employment Taxes (1954 Code) Section 31.3121(d) (1) (c) (3).

### 7.

■ The facts of this case lead to the inevitable conclusion that the applicators in question were not employees of the plaintiff within the purview of the Federal Insurance Contributions Act or the Federal Unemployment Tax Act. The evidence more than preponderates in favor of the conclusion that the plaintiff was interested only in the final result accomplished by the applicators, and not in the details and means by which the desired results were accomplished. There is no evidence of any express agreements spelling out the extent to which the plaintiff had control over the work, and the evidence clearly indicated that the plaintiff had reserved unto himself the right to control only the final results to be accomplished rather than the details of its accomplishment. The overall picture, therefore, is one of a relationship wherein the plaintiff acted as a principal contractor and the applicator as an independent, subcontractor, rather than employee of the plaintiff. Thor Company v. United States, D. C., 173 F.Supp. 65.

### 8.

Judgment should be entered for the plaintiff in an amount to be computed by the defendant, with the approval of the plaintiff, reserving the right to both parties to further apply to this Court for settlement in case of disagreement as to amount.