**ADAMS v. UNITED STATES.**
No. 29–53.

United States Court of Claims.
Feb. 2, 1954.

Fred W. Shields, Washington, D. C., King & King, Washington, D. C., on the briefs, for plaintiff.

Frances L. Nunn, Warren E. Burger, Asst. Atty. Gen., Donald D. Webster, Washington, D. C., on the briefs, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER and MADDEN, Judges.

JONES, Chief Judge.

Plaintiff sues for active duty pay and allowances of an officer of his rank and length of service from September 25, 1950 to February 9, 1951, and for the retired pay of an officer of his rank and length of service subsequent to February 9, 1951.

The plaintiff, a reserve officer in the United States Navy, received orders on September 20, 1950, issued by the Chief of Naval Personnel, assigning him to active duty and directing him to report to the Senior Medical Officer, United States Naval Recruiting Station, Albuquerque, New Mexico, for physical examination incident to his assignment to active duty. The order read in part as follows:

"1. You will proceed and report to such medical officer as may be designated in the first endorsement on the back hereof for physical examination, including flight physical in the case of aviators. You are hereby ordered to temporary active duty for this purpose and will be considered in a temporary active duty status during the time required for physical examination and for travel necessary for compliance with these orders. If found physically qualified, and later upon review of your medical record by the Bureau of Medicine and Surgery a waiver is required by law, such waiver will be issued. Upon being found qualified for active duty, complete Form NME 53, Selective Service Home Address Card, and comply with provisions of NavAct 15-48.

"2. If found not physically qualified, you will immediately return to the above address and upon arrival consider yourself released from temporary active duty. In this event, the examining medical officer will advise the Bureau of Naval Personnel by dispatch, referencing these orders, stating the defects in detail together with his recommendation, with information copies to "CC" addresses on this order.

"3. If found physically qualified, you will immediately return to the above address and upon arrival consider yourself released from active duty until such time as will enable you to commence travel within ten days after completion of physical examination, and proceed to San Diego, Calif., and report to the Commanding Officer, Navy Communication Station, Eleventh Naval District Headquarters, for temporary active duty under instruction for a period of about ten days. Upon completion of this temporary duty and when directed by your commanding officer, you will regard yourself detached; will proceed to San Francisco, Calif., and report to the Deputy Commander, Military Sea Transportation Service, Pacific, for duty afloat.

"4. Pay and allowances are chargeable to 1711453.16, MPN 1951, expenditure account 71110. Cost of travel is chargeable to 1711453.18, MPN 1951, expenditure account 74110, object class 029. Travel via private conveyance is authorized.

"5. Effective this date your branch designator is changed from USNR–O to USNR and your status in the Organized Reserve is hereby terminated."

Pursuant to such orders plaintiff set out in his automobile from his home in Hereford, Texas. Some distance east of Albuquerque, New Mexico, his car was involved in a collision. Plaintiff suffered injuries which he alleges resulted in his permanent disability and permanent incapacity for the performance of active duty in the Navy.

Plaintiff was hospitalized at the Veterans Administration Hospital, Albuquerque, New Mexico, from September 26, 1950, to October 16, 1950, when he was transferred to the United States Naval Hospital, San Diego, California, where he remained until February 9, 1951. He was then discharged as having received maximum benefits from hospitalization.

The issue is whether plaintiff, at the time of his injury, was on active duty of a character that would make him eligible for pay and allowances while hospitalized; and also whether he would be entitled to the benefits of section 4 of the Naval Aviation Personnel Act of 1940, 54 Stat. 864, as amended, 63 Stat. 201, 34 U.S.C.A. § 855c–1 or to the benefits of sections 401 and 402 of the Career Compensation Act of October 12, 1949, 63 Stat. 802, 816.

The substance of the case depends primarily on whether plaintiff was on active duty.

The defendant pleads that in reality plaintiff was not on active duty, that he was traveling on orders to report for duty at the time of his injury.

On October 10, 1952, the Physical Evaluation Board, in passing on plaintiff's claim for retirement benefits, found that plaintiff was not physically qualified for active service, and that although he had suffered disability in line of duty, he was not entitled to retirement pay, or active duty pay and allowances while in the hospital. This finding was recommended by the Physical Review Council and approved by the Secretary of the Navy on October 13, 1952.

Various collateral issues were raised and numerous distinctions were drawn, but when all these are cleared the question depends on the wording of the orders and of the statutes under which the pay and allowances and retirement benefits are claimed. These seem clear.

We have quoted the orders. It will be noted that they stated that he was ordered to temporary active duty and would "be considered in a temporary active duty status during the time required for physical examination and *for travel necessary for compliance with these orders*. (Italics ours.) The orders further stated that plaintiff's "status in the Organized Reserve is hereby terminated." In other words, the orders issued and delivered before plaintiff left his home completely severed his old status and created a new one.

Section 4 of the Naval Aviation Personnel Act, supra, is in part as follows:

"All officers, nurses, warrant officers, and enlisted men of the United States Naval Reserve or United States Marine Corps Reserve, who, —(1) if called or ordered into active naval or military service by the Federal Government for extended naval or military service in excess of thirty days, suffer disability or death in line of duty from disease while so employed; or (2) if called or ordered by the Federal Government to active naval or military service or to perform active duty for training or inactive-duty training *for any period of time,* suffer disability or death in line of duty from injury while so employed; shall be deemed to have been in the active naval service during such period, and they or their beneficiaries shall be in all respects entitled to receive the same pensions, compensation, death gratuity, retirement pay, hospital benefits, and pay and allowances as are now or may hereafter be provided by law or regula-

tion for officers, warrant officers, nurses, and enlisted men of corresponding grades and length of service of the regular Navy or Marine Corps: [Italics ours]."

The language is made more significant by the fact that the original provision required a service of more than thirty days, but the act was amended to include a call or order for any period of time.

We can see no escape from this language. Defendant would have us go behind the plain import of the language and construe it to mean something not found in its terms. It is not our province to ask why. It may be that the armed services have had difficulty in securing enough competent medical and other technicians. In the division of powers we may not question the wisdom of a legislative enactment, nor may we legislate by judicial fiat. We simply interpret. Does anyone doubt that if plaintiff had turned aside on the way and refused to report he could have been court-martialled? Would a plea that the orders did not mean what they said have been accepted as a defense?

The defendant, while conceding that the orders stipulated that plaintiff would be on active duty while traveling, insists it was not really active duty, that it was simply traveling to active duty. This recalls the age-old boyhood riddle of "When is a door not a door?" The supposedly clever answer was "When it is ajar." But a court would have difficulty in deciding that it was not still a door.

When all the reasoned distinctions, the strained interpretations, the explanations and the customary constructions are brought to the light, the cold language of the orders when laid alongside the wording of the congressional act, permit only one reasonable conclusion. The plaintiff was on active duty from the time the journey began.

The plaintiff is entitled to the pay and allowances of an officer of his rank and length of service from September 25, 1950, to February 9, 1951. Saunders v. United States, 85 Ct.Cl. 300; Smith v. United States, 102 F.Supp. 769, 122 Ct. Cl. 444. Judgment on this phase of the case will be suspended pending a report from the General Accounting Office showing the amount due.

Judgment on whether plaintiff is entitled to retirement benefits will be deferred a reasonable time in order for the proper board to determine whether plaintiff's disability is as much as 30 percent, or to allow for the filing of a statement or stipulation of the parties setting forth the facts pertaining to this issue.

MADDEN, WHITAKER and LITTLETON, Judges, concur.