**John EDWARDS, D/B/A Inland Roofing Co.**

v.

**UNITED STATES.**

No. 126-55.

United States Court of Claims.

Dec. 3, 1958.

Joseph J. Lyman, Washington, D. C., for plaintiff.

Harold S. Larsen, Washington, D. C., with whom was Charles K. Rice, Asst. Atty. Gen., James P. Garland, Baltimore, Md., on the brief, for defendant.

JONES, Chief Judge.

This is an action by a taxpayer to recover from the Government Federal insurance contribution taxes paid under section 1400 et seq., of the Internal Revenue Code of 1939 (26 U.S.C. § 1400 et seq.) for the period January 1, 1949, through December 31, 1952. The issue presented is whether certain mechanics called "applicators" and their helpers, performing services for the plaintiff, were or were not employees within the meaning of section 1426(d) of the Internal Revenue Code of 1939, as amended. That section provides in pertinent part as follows:

"(d) *Employee.* The term 'employee' includes an officer of a corporation, but such term does not include (1) any individual who, under the usual common-law rules applicable in determining the employer-employee relationship, has the status of an independent contractor or (2) any individual (except an officer of a corporation) who is not an employee under such common-law rules." [26 U.S.C. (1952 ed.) § 1426 (d)]

If the applicators were not employees within the meaning of that section, but were independent contractors, then the taxes were illegally assessed and collected.

The plaintiff, an individual doing business as Inland Roofing Company engaged in contracting for the sale, application, and installation of roofing and siding materials, maintained a regular business office in Spokane, Washington. His salesmen obtained written contracts for the plaintiff with property owners for the sale and application of roofing and siding materials, and, on occasion, for the installation of storm windows. The con-

tract form contained a general description of the improvements to be made and an agreed price for labor and materials.

The individuals who performed the labor on the contracts were called "applicators." The plaintiff had the names of several qualified applicators whom he could call when he had contracts to be performed. In some instances, applicators would come to his office seeking work and at other times the plaintiff would advertise in the newspaper for experienced applicators.

When the plaintiff was ready to commence work on a particular contract, the applicator, if he agreed to do the job, was handed a work sheet which contained the name and address of the property owner where the work was to be performed, a general description of the work, together with an approximation of the number of squares of material to be applied or the number of storm windows to be installed.

The relationship between the plaintiff and the applicators was such that the applicators were free to accept or reject any proffered job. Occasionally a job might be rejected by the applicator and the plaintiff would then endeavor to find another job acceptable to that particular applicator.

, The plaintiff generally paid the prevailing rate to the applicators for each square of roofing or siding applied, or for each storm window installed and consequently there were no price negotiations between the plaintiff and the applicator, except in a situation where an applicator might do extra work on a particular job.

Contract materials such as roofing, siding materials, and storm windows were furnished by the plaintiff, but tools, installation equipment such as planks, ladders, and materials for scaffolding, were furnished by the applicator himself.

The applicator worked either alone or with an associate applicator of his choice. The compensation paid for a job was divided between associate applicators in accordance with the agreement between them, and the plaintiff did not participate in such arrangements. The applicators were free to and did employ helpers without the approval of the plaintiff. The helpers were paid either by the applicator or by the plaintiff at the specific direction of the applicator, from the amount of compensation due from the plaintiff to the applicator on the specific job on which the helpers were employed. The helpers were under the control of the applicators in the performance of their work and with respect to hiring and discharge.

The plaintiff was not experienced in the manner and method of performing the work of applying roofing and siding materials, or in the installation of storm windows. He had no supervisors or other personnel to observe, instruct, or direct the applicators as the work progressed. He did not personally undertake to supervise the work of the applicators, although he would occasionally visit a job.

Each job was a separate and distinct undertaking between the plaintiff and the applicator who was compensated by the job and not upon an hourly, daily, or weekly basis. Payment was made at the completion of a job and not on any particular day unless a special arrangement for such payment was made between an individual applicator and the plaintiff.

The applicator could not substitute materials and generally had no authority to change the contract. However, in minor matters such as whether or not porch posts should or should not be covered with siding material, the applicator might consult with the customer, and could proceed in accordance with the customer's instructions without prior consultation with the plaintiff.

The applicators paid all of their expenses incident to the performance of the work without accounting to or reimbursement from the plaintiff.

The plaintiff endeavored to obtain enough contract jobs ahead in order that he might regularly assign jobs to competent applicators and thereby keep them

available for performance of his contracts. When a job was completed, the applicator often returned for another work sheet. If no job was available, the plaintiff sometimes called one of his competitors and requested assignment of a job to the applicator, but usually the applicator would seek work from the competitors of the plaintiff on his own initiative.

The plaintiff never terminated his arrangement with an applicator during the progress of a job. If not satisfied with an applicator's work, the plaintiff simply did not offer him another work sheet. The applicator, if dissatisfied, refused the next job offered by the plaintiff.

The applicators were not members of any labor union and plaintiff's dealings with them were on an individual basis. Plaintiff had no agreement which entitled him to preferred call on the time and services of the applicators.

█ Under the statutory definition the usual common law rules are to be applied in determining whether an individual is an employee and within the act or whether he is an independent contractor, thus making the act inapplicable. While the question of the existence of an employer-employee relationship must be decided on the basis of all the factors involved, Bartels v. Birmingham, 332 U.S. 126, 130, 67 S.Ct. 1547, 91 L.Ed. 1947; Metropolitan Roofing & Modernizing Co. v. United States, D.C., 125 F. Supp. 670; Jagolinzer v. United States, D.C., 150 F.Supp. 489, the generally accepted and fundamental test is whether there exists, on the part of the employer, control or a right to control the activities of the alleged employee not only as to the result to be accomplished, but also as to the manner and method of attaining the result. De-Raef Corporation v. United States, 70 F.Supp. 264, 108 Ct.Cl. 255, 266; Radio City Music Hall Corp. v. United States, 2 Cir., 135 F.2d 715; Party Cab Co. v. United States, 7 Cir., 172 F.2d 87, 10 A.L.R.2d 358; National Labor Relations Board v. Nu-Car Carriers, 3 Cir., 189 F.2d 756. Restatement of the Law of Agency, §§ 2(3) and 220. The same test is adopted in the applicable Treasury Regulations which provide, 26 CFR § 403.204(b),

> "Generally such relationship [of employer and employee] exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to *what* shall be done but *how* it shall be done. * * *" [Emphasis supplied.]

While the decision in United States v. Silk, 331 U.S. 704, 67 S.Ct. 1463, 91 L. Ed. 1757, heavily relied on by defendant, but cited by both parties, might indicate that a somewhat broader definition of employee should be adopted through the so-called "economic reality" test, it is significant that the common law definition was written into the statute by Congress for the first time in 1948, after the decision in the Silk case. The repudiation of the expansion of the common law rule proposed by the Treasury Department for determining the existence of the relationship of employer and employee was accomplished by adding to § 1607 (i) of the Internal Revenue Code, 26 U. S.C.A. § 1607(i), the words:

> "but such term [employee] does not include (1) any individual who, under the usual common-law rules applicable in determining the employer-employee relationship, has the status of an independent contractor or (2) any individual (except an officer of a corporation) who is not an employee under such common-law rules."

In the present case the plaintiff had no right to control or direct the applicators as to the means or methods used by them in accomplishing the result. The plaintiff's only concern was that the applicators accomplish a result in conform-

ity with the terms of the contract with the owner of the structure to which the roofing or siding was being applied. In this way the plaintiff had no more control over the applicator than a house owner exerts over a house painter and it would be repugnant to the common law to consider the ordinary house painter anything other than an independent contractor.

The applicators here decided when and during what hours they would work and the manner in which they would perform their work. Unlike the performers held to be employees in Ringling Bros.-Barnum & Bailey Combined Shows v. Higgins, 2 Cir., 189 F.2d 865, the applicators did not commit themselves to a specified time. See Central New York Insulating Co. v. United States, D.C., 138 F.Supp. 236.

In the instant case the applicators used their own means of transportation to and from the job without compensation from the plaintiff [1] and used their own tools. The applicators hired their own helpers without prior notification to or authorization from the plaintiff.

Defendant relies on Security Roofing & Construction Co. v. United States, D. C., 163 F.Supp. 794, 795. That case, like the instant case, involved the question whether applicators were employees of the taxpayer or independent contractors. The court noted that the fundamental factor in determining whether the applicators were employees or independent contractors was the "degree to which the plaintiff has the right to control and direct them, not only as to the result to be accomplished by the work, but also as to the details and the means by which that result is accomplished." After analyzing the facts relative to the degree of control exercised by the taxpayer, the court concluded that the applicators were employees despite two very similar cases in the same circuit to the contrary. Metropolitan Roofing & Modernizing Co. v.

United States, supra; Jagolinzer v. United States, supra. The facts which persuaded the court in the Security case that the degree of control exercised by the taxpayer rendered him the employer of the applicators, were similar but not identical in all respects to the facts in this case. In the Security case, the applicators could not perform any additional work for a customer of the taxpayer or resolve even minor problems arising in connection with a job without first consulting the taxpayer. In the instant case, the applicators had considerably more freedom. Findings 11 and 12. In the Security case applicators were required to refer all inquiries from passersby to the taxpayer. No such requirement has been established in the instant case. In the Security case, the taxpayer supplied the staging and ladders or, if the applicator used his own staging, the taxpayer paid him an additional amount. This was not true in the case at bar. Finding 16. In the Security case, the taxpayer could take an applicator off one job and send him to another; the taxpayer could discharge the applicator at any time for cause. The taxpayer in the instant case had no such rights. Finding 18. In the Security case, the taxpayer performed all cleanup work at the completion of the job and in general exercised fairly close supervision of the manner in which the work of the applicators was performed. This was not true in the instant case. Finding 8. We are of the opinion that the facts in the instant case do not establish the same degree of control found by the District Court to be lodged in the taxpayer in the Security case.

■ The Government contends that the fact that the plaintiff was enrolled under and paid contributions on behalf of applicators to the state industrial and unempoyment program has a bearing on the employee status of the applicator. Finding 19. Following the view taken

---

[1]. One of the applicators rented a truck on a mileage basis for the plaintiff. The applicator provided his own gasoline and oil and used the truck in the performance of jobs for the plaintiff and occasionally on jobs for the plaintiff's competitors with the plaintiff's knowledge. (Finding 7.)

in Dimmitt-Rickhoff-Bayer Real Estate Co. v. Finnegan, 8 Cir., 179 F.2d 882, we feel that fact is not decisive in view of the whole situation herein presented.

On the basis of all the factors involved, we are led to the conclusion that the applicators here were independent contractors and not employees. In reaching this decision we have applied the tests as to whether an applicator is an employee or an independent contractor laid down in Levin v. Manning, D.C., 124 F. Supp. 192; Silver v. United States, D. C., 131 F.Supp. 209; Metropolitan Roofing & Modernizing Co. v. United States, supra; Farm & Home Modernization Corp. v. United States, D.C., 138 F.Supp. 423; Millard's, Inc., v. United States, D.C., 146 F.Supp. 385; Jagolinzer v. United States, supra.

It follows that the plaintiff is entitled to recover together with interest thereon as provided by law, and judgment will therefore be entered to that effect with the amount of recovery to be determined pursuant to Rule 38(c), 28 U.S.C.A.

It is so ordered.

LARAMORE, MADDEN and WHITAKER, Judges, concur.