**Leona HOMLITAS, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. No. 61–128.

United States District Court
D. Oregon.

Feb. 15, 1962.

Pozzi, Levin & Wilson, Philip A. Levin, Portland, Or., Collins & Redden, Hugh B. Collins, Medford, Or., for plaintiff.

Sidney I. Lezak, Acting U. S. Atty., Victor E. Harr, Asst. U. S. Atty., Portland, Or., for defendant.

KILKENNY, District Judge.

This cause is before the Court on the segregated issue of the applicability of the Federal Tort Claims Act (28 U.S.C. § 1346(b), § 2671 et seq.) to the state of facts as disclosed by the record.

Plaintiff's intestate, Walt J. Young, enlisted in the Regular Army of the United States for three years' active duty on June 15, 1959. On September 11, 1960, Young was stationed at Fort Bragg, North Carolina. Young was granted 20 days' ordinary leave commencing September 6, 1960, and at that time signed-out as required by regulations. His leave status was to terminate on September 27th. While so carried on the records of his organization and while on leave status, he requested and received passage on a U. S. Air Force plane on September 11, 1960, for transportation from Lowry Air Force Base to Hamilton Air Force Base. The Air Force plane in which he was a passenger carried him to his death in an accident which occurred on September 11, 1960.

The case was tried and presented on the theory that Young obtained passage on the plane pursuant to the provisions of AFR 76–6 [1] which provides, among other things, for gratuitous flight for military personnel and others on a space available basis.

Plaintiff contends that the Federal Tort Claims Act affords relief to the representative of decedent, who was on leave status, under the doctrine as announced in Brooks v. United States, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200. Defendant asserts that Young, being a member of the armed services of the United States, having claimed his privilege to utilize the transportation available by reason of his particular status, is precluded from prosecuting such an action under the doctrine as taught in Feres v. United States,

---

1. AFR 76–6

&ast; &ast; &ast; &ast; &ast;

"a. Military personnel of the United States (including midshipmen or cadets of the Army, Navy, Air Force, and Coast Guard) in active Federal Service, while in a duty status on a requirement basis, or while in a leave status on a space available basis. Orders directing permanent change of station or temporary duty travel, or authorizing leave, will constitute authority."

&ast; &ast; &ast; &ast; &ast; &ast;

340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152.

 Decedent, though on leave status, was subject to the Uniform Code of Military Justice. 10 U.S.C. § 802, Art. 2.[2] Judicial notice is taken of the fact that all pilots of aircraft in the United States Air Force are commissioned officers. Regulation 60–16 [3] of the Department of the Air Force dated September 16, 1958, gives to the pilot in command of the aircraft the command of all persons on board. Although decedent was on leave status, he was still in the active service of the United States Army and as such subject to military discipline. If, during the flight, decedent had violated 10 U.S.C. § 889 [4] or 10 U.S.C. § 890 [5] or 10 U.S.C. § 892 [6], there is no question but that he would have been subject to military discipline and trial before a military court.

 In Brooks v. United States, supra, the members of the armed forces involved in the accident were on leave status. However, these servicemen were riding in their own automobile on a public highway at the time the accident occurred. The vehicle which caused the injuries and death was owned and operated by the United States Army. In his opinion, Mr. Justice Murphy placed emphasis on the fact that the servicemen were engaged in a venture which was "not *incident*" to their service at the time the injuries were received. Furthermore, emphasis is placed on the fact that the court was dealing with an accident which had nothing whatsoever to do with the *Army careers of the men involved*. The Court recognized that an entirely different case would be presented if the accident was in any way incident to the military careers of the servicemen in question. Although the opinion contains rather broad language which might encompass the factual situation involved in the present case, we must keep in mind the rule that all opinions

2. 10 U.S.C. § 802. Art. 2
"The following persons are subject to this chapter:
"(1) Members of a regular component of the armed forces, including those *awaiting discharge after expiration of their terms of enlistment*; volunteers from the time of their muster or acceptance into the armed forces; inductees from the time of their actual induction into the armed forces; and other persons lawfully called or ordered into, or to duty in or for training in, the armed forces, from the dates when they are required by the terms of the call or order to obey it. * * *"

3. AFR 60–16
* * * * * * *
"6. Who Has Command of an Aircraft. The organization commander responsible for the flight will designate the pilot in command of the aircraft. This pilot, regardless of his grade or pilot rating, commands all persons on board and *is* responsible for the safe operation of the aircraft. He may, at any time he considers it necessary in the interest of safety and to protect lives, deviate from this or other regulations and from any other instructions or orders he has received."
* * * * * * *

4. 10 U.S.C. § 889
"Any person subject to this chapter who behaves with disrespect toward his superior commissioned officer shall be punished as a court-martial may direct."

5. 10 U.S.C. § 890
"Any person subject to this chapter who—
"(1) strikes his superior commissioned officer or draws or lifts up any weapon or offers any violence against him while he is in the execution of his office; or
"(2) willfully disobeys a lawful command of his superior commissioned officer; shall be punished, if the offense is committed in time of war, by death or such other punishment as a court-martial may direct, and if the offense is committed at any other time, by such punishment, other than death, as a court-martial may direct."

6. 10 U.S.C. § 892
"Any person subject to this chapter who—
"(1) violates or fails to obey any lawful general order or regulation;
"(2) having knowledge of any other lawful order issued by a member of the armed forces, which it is his duty to obey, fails to obey the order; or
"(3) is derelict in the performance of his duties; shall be punished as a court-martial may direct."

must be read and the language used construed in the light of their particular facts. I do not believe that the decision in Brooks is controlling on the factual background with which I am confronted. As said by Justice Holmes in Lochner v. People of State of New York, 198 U.S. 45, 74, 25 S.Ct. 539, 547, 49 L.Ed. 937, "general propositions do not decide concrete cases."

Feres v. United States, supra, involved three separate cases, each of which presented the same issue. In Feres, the United States was charged with negligence in connection with a fire which destroyed the barracks in which Feres, the serviceman, was housed. He was on active duty at the time. In Jefferson (Jefferson v. United States, D.C., 74 F. Supp. 209), the United States was charged with negligence when one of its doctors left a towel in plaintiff's abdomen during the course of surgery. He was on active duty at the time of the operation. The Griggs case (Griggs v. United States, 2 Cir., 178 F.2d 1) also involved a charge of negligence against Army surgeons while the serviceman was on active duty. These cases are distinguishable from the present case. None of the servicemen were on leave status at the time of the occurrence in which they were injured or killed. However, the language of the opinion in Feres, in my judgment, forecasts the probable decision of the Supreme Court on the admitted facts in this case. Although in Feres, as in Brooks, the language used must be read and construed in the light of the facts involved, we cannot overlook the positive language in both cases which would indicate non-liability of the Government under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity *incident to military service.* The doctrine taught in those cases requires an inspection of the serviceman's activity at the time of the occurrence. At the time of the accident in Brooks, the serviceman was engaged in no activity which was in any way connected with the military service. He was in exactly the same position as any other civilian might have been at the time and place in question. While decedent Young, in the present case, could have used his own automobile or any other method of transportation he desired, he elected to use a method of transportation which was directly connected with and was incident to his military service. Initially, at the inception of his leave, Young had the same status as Brooks. However, he voluntarily changed this status when he sought and secured passage on the military aircraft, a privilege to which he was entitled only by reason of his service connection. Plaintiff argues that certain named civilians are entitled to transportation on Air Force planes under the same rules and regulations which permitted decedent's transportation, and that most certainly a civilian would not be precluded from prosecuting an action under the Federal Tort Claims Act. Civilians entitled to such transportation may or may not be engaged in an activity which is incident to military service. In any event, this problem is not before me and an expression of an opinion on the subject would be nothing more than pure dictum.

The recent case of Fass v. United States, D.C.E.D.N.Y.1961, 191 F.Supp. 367, is directly in point and, in my opinion, the District Judge in that case arrived at the correct conclusion. In United States v. Brown, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139, the negligence occurred after the serviceman was discharged from the armed services and is patently not in point. The decision in Healy v. United States, D.C.S.D.N.Y. 1961, 192 F.Supp. 325, and Hungerford v. United States, D.C.N.D.Cal.1961, 192 F.Supp. 581, although factually different from the present case, support the views herein expressed.

Although certain testimony was admitted at a supplemental hearing, I do not feel that this testimony in any manner altered the agreed statement of facts and, since the facts are agreed, I see no reason for making detailed findings. My

general findings are in favor of the defendant's contentions and against those of the plaintiff. The Federal Tort Claims Act does not apply. Judgment must be entered for the defendant.