Marvin **MEISTER**
v.
The **UNITED STATES.**
No. 54–62.

United States Court of Claims.
July 12, 1963.

Joseph J. Schwartz, Brooklyn, N. Y., for plaintiff.

Edgar H. Twine, Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas, for defendant.

Before JONES, Chief Judge, and WHITAKER, LARAMORE, DURFEE and DAVIS, Judges.

JONES, Chief Judge.

The plaintiff is a commander in the United States Naval Reserve, attached in a pay status to the Naval Reserve Mobilization Team 3–8 which assembled for periodic training sessions at the U. S. Navy and Marine Corps Training Center, Freeport, New York.

On February 23, 1961, the executive officer of plaintiff's mobilization team addressed a letter to all members of that unit containing the following instructions:

"1. On 8 March 1961 this Division is scheduled for the Third Naval District Annual Inspection.

"2. It is required that attendance be 100% to insure that all officers and men are 'up' for the personnel part of this inspection. All Hands are hereby ordered to be at the Training Center no later than 1920. This will allow time for attending to details for proper presentation on the drill deck."

In response to this order the plaintiff drove his car to the Reserve Training Center on the night of March 8, arriving at approximately 1920 as directed. He parked his car at the curb outside the chain link fence which, the evidence shows, bounded the Center. In order to reach the door of the training hall in which the inspection was to take place, it was necessary for the plaintiff to pass through a gate in this fence and cross a short sidewalk constructed for that purpose. On the night of March 8, it was snowing and sleeting, and the plaintiff, after crossing through the gate slipped and fell upon the sidewalk, fracturing his ankle. Although the evidence is unclear, it appears that his point of impact was approximately half the distance between the gate and the door to the training hall. As a result of his fracture, the plaintiff was admitted to the U. S. Naval Hospital at St. Albans, New York, where he remained in an in-patient status until March 15, 1961. Thereafter he reported to the hospital in an out-patient status and received further care until June 22, 1961. The mobilization team's commanding officer submitted the required routine accident report giving the circumstances under which the accident occurred.

By letter dated April 11, 1961, the Commandant of the Third Naval District informed the plaintiff that it had been determined that plaintiff's injury had been incurred in the line of duty and that he was entitled to receive the benefits provided for by Public Law 108, 81st Cong., June 20, 1949.[1] Subsequently, on June 5, 1961, the Bureau of Medicine and Surgery made the independent determination that the plaintiff's accident rendered him unable to perform the naval duties to which he was normally assigned until April 28, 1961. Pursuant to these determinations the plaintiff was paid active duty pay and allowances for the period from March 8 until April 28, amounting to $1,622.66.

On the day of his final discharge from out-patient treatment, the plaintiff directed a request to the Chief of the Bureau of Medicine and Surgery asking that an affirmative determination be made that he had been unable to perform his naval duties for the further period from April 28 until June 22. This request was a necessary preliminary to any claim for compensation for that period. However, while this request was pending, the accident report which had been submitted by his unit had been undergoing routine processing. By endorsement thereon, dated June 27, 1961, the Judge Advocate General for the Navy announced his conclusion that the plain-

---

1. Public Law 108, June 20, 1949, as amended, is presently codified as 10 U.S.C. § 6148(a) (1958).

tiff's injury had not in fact been incurred during a period of inactive duty training within the meaning of 10 U.S.C. § 6148.

As a result of this determination the Chief of Naval Personnel ordered the Commandant of the Third Naval District to institute the proper procedures to collect the $1,622.66 which had already been advanced to the plaintiff, and to collect an additional $238.00 representing the cost of plaintiff's hospitalization. Although the record does not disclose what steps, if any, were taken in this regard, it is clear that the plaintiff still retains the disputed sum, and that he has not made remittance to cover the cost of medical care. Another result flowing from the Judge Advocate General's determination is that on July 21, 1961, the Bureau of Medicine and Surgery denied the plaintiff's June 22 request for extended coverage, stating: "In view of the decision of the Judge Advocate General, * * * the requested determination will not be made." The effect of this refusal to rule on plaintiff's continued ability to perform naval duties subsequent to April 28 will be considered below.

The plaintiff's position here is that he is entitled to retain the pay and allowances which he has already received, and that he should not be required to pay the hospital bill tendered. In addition, he seeks compensation for the period from April 28 through June 22, 1961 in the amount of $2,199.92. The Government, without admitting liability, has placed this amount in issue, stating that the correct figure from the appropriate pay table would be $1,727.42. The defendant has counterclaimed for the amount of $1,860.66, thereby contesting the right of the plaintiff to retain the value of the benefits received.

2. In taking this position the defendant relies on a prior determination of the Comptroller General where the facts were similar. In response to a question whether the "while so employed" coverage of Public Law 108 was limited to periods of performance beginning with muster and ending with dismissal, he answered:

The single legal issue in this case is whether the plaintiff, as a result of his injury, was disabled in the line of duty while employed on inactive duty training within the scope of 10 U.S.C. § 6148(a), which states in pertinent part:

"A member of the Naval Reserve, the Fleet Reserve, the Marine Corps Reserve, or the Fleet Marine Corps Reserve who is ordered to active duty, or *to perform inactive-duty training,* for any period of time, *and is disabled in line of duty from injury while so employed,* * * * is entitled to the same pension, compensation, death gratuity, hospital benefits, and pay and allowances as are provided by law or regulation in the case of a member of the Regular Navy or the Regular Marine Corps of the same grade and length of service." [Emphasis added.]

The plaintiff's theory is that this statute, like workmen's compensation statutes, has as its purpose the protection of persons injured while in pursuit of their employer's job or enterprise. The logical conclusion of this theory is that the statute should be liberally construed. The defendant, on the other hand, contends that workmen's compensation statutes which contain such traditional language as "arising out of and in the course of employment" are of no value in ascertaining the legislative intent with regard to 10 U.S.C. § 6148(a). The defendant urges that since the Congress chose not to use such language, electing instead the "while so employed" form of expression, it must have thereby rejected the broad coverage afforded by compensation statutes in favor of the position that recovery must be restricted to injuries incurred between the time of muster and the time of dismissal.[2]

"* * * it is our view that the Congress intended to provide coverage for injuries suffered by inactive duty trainees only while actually performing inactive duty training * * *." [38 Comp.Gen. 841, 843 (1959)]

Without attempting to lay down a rule of general application, we are of the opinion that the record before us dictates the conclusion that, at the time he sustained his injury, the plaintiff was "employed" in inactive duty training within the meaning of the statute.

Counsel for the defense, in his brief, importunes us not to be swayed by the natural appeal to sympathy which the facts evoke. It would be harsh indeed to deny the plaintiff relief in such a close fact situation, but it is not for reasons of sympathy or compassion that we find for the plaintiff, but it is because we believe that the law demands that conclusion. Our rejection of sympathy as the proper vehicle for decision does not, however, mean that we must strictly construe the statute in question. In the case of Lemly v. United States, 75 F. Supp. 248, 252, 109 Ct.Cl. 760, 767 (1948), this court clearly set forth the rule to be followed in such situations:

"The provisions of the Naval Aviation Personnel Act of 1940 [which is the same section, in substance, as the one before us] as well as the other retirement statutes were enacted from motives of public policy and should not be narrowly construed."

This principle requires us to take a broader approach to the facts than the defendant would have us do, and it calls upon us to bring the plaintiff within the meaning of the statute if we may do so without doing violence to the language.

The term "while so employed" admittedly is susceptible of more than one interpretation, and the Congress has not seen fit to make clear the exact connotation. Lacking a more definitive approach, we must view the condition of employment in its generally accepted sense. It is a well-established fact that the state of employment cannot be circumscribed by a single characteristic. In determining its presence or absence we must consider the total situation and not be constrained by some individual feature which we might give some peculiar weight. Ben v. United States, 139 F.Supp. 883, 886-887 (N.D.N.Y. 1956). The existence of the state of employment, as we see it, consists of two primary factors which may exist in varying degrees. The first of these is the degree of physical proximity between the employee and the employer, and the second factor concerns the strength of the manifestations of the employee's intention to be doing his employer's business. These two factors create the substance of the classic common law test of the master-servant relationship— whether the employer has "control or right to control" the employee.[3]

At the time of the accident the plaintiff had crossed through the gate into the compound and was thus upon a Government reservation which had as its sole function the training of officers and men of the Naval Reserve on inactive duty. The order of February 23, 1961, directing him to be "at the Training Center" made no mention of the training hall and, accordingly, he had arrived at the place at which he had been ordered to be. He was within the allowable time limits. There can be no dispute that the plaintiff was in close physical proximity to his ultimate goal, and the defendant does not contend that the plaintiff had any intention other than to report on time for his duties. In the face of such facts, viewed as the Lemly decision would have us view them, we can reach no other conclusion than that the plaintiff was in an inactive duty status when he fell. In Adams v. United States, 118 F.Supp. 381, 384, 127 Ct.Cl. 470, 474 (1954) a Naval Reserve officer was injured in an automobile accident while en route his duty station under official travel orders. We said, in holding for the plaintiff: "Does anyone doubt that if plaintiff had turned aside on the way and refused to report he

---

3. Edwards v. United States, 168 F.Supp. 955, 957, 144 Ct.Cl. 158, 162 (1958); De-Raef Corp. v. United States, 70 F. Supp. 264, 270, 108 Ct.Cl. 255, 266 (1947). For a general view, see Restatement (second), Agency §§ 2(2), 14 (and comment a thereto), and 220(1).

could have been court-martialled? Would a plea that the orders did not mean what they said have been accepted as a defense?" Although there are distinctions, to be sure, the same philosophy should be applied to the instant case. No matter where we turn, we are unable to uncover one single fact which indicates that the plaintiff was not within the scope of his assigned duties when he slipped.

Defendant's motion for summary judgment is denied, and its counterclaim is dismissed. Plaintiff's motion for summary judgment is granted insofar as it determines the liability of the United States for the period from March 8, 1961 to April 28, 1961, and plaintiff is entitled to retain the $1,622.66 and the value of the hospital benefits already received. Action is suspended as to the period from April 28, 1961 through June 22, 1961, to permit the plaintiff to obtain an administrative determination as to whether his disability continued through all or any part of that period. Should the plaintiff obtain a determination in the affirmative for all or any part of that period, then the amount of his recovery with regard to such period shall be determined pursuant to Rule 38(c).

WHITAKER, Judge (dissenting).

There can be no doubt that the majority has given the statute a "liberal" interpretation. It is an interpretation of which, in my opinion, the statute is not susceptible.

The statute gives to a reservist certain benefits, after having been ordered to inactive duty training, if he is disabled in line of duty "while so employed." He cannot recover for an injury unless at the time he was injured he was employed on inactive duty training. At the time of plaintiff's injury he was not "so employed"; he was only on his way to being so employed. He was not so employed until after he had reported for duty.

Suppose after he had entered the compound, but before he had reported, he remembered something he had forgotten to do, at his home or his office, something that made it imperative for him to return, and he did return without having reported for duty, would anyone say he was then employed on inactive duty training?

Congress did not intend to compensate a reservist for injury until he had reported. To illustrate: 10 U.S.C. § 6148 (a) (Supp. V, 1952), reads the same as the same numbered section of the 1958 edition, so far as is here pertinent. It gives certain benefits to reservists "while so employed [on inactive duty training]," but subsection (c) of section 6148 gives certain benefits to certain reservists "while on active duty or performing inactive-duty training, or *while on authorized travel to or from such duty or training.*" (Italics supplied) So when Congress wanted to take care of an injury incurred before reporting for duty, it said so in plain words. (This section does not appear in the 1958 edition.)

Again: Title 38 U.S.C. relates to veterans' benefits. Section 106(d) thereof provides that:

"For the purposes of this title, any individual—

\*   \*   \*   \*   \*   \*

"(2) who is disabled or dies from an injury incurred after December 31, 1956, by him while proceeding directly to or returning directly from such active duty for training or inactive duty training, as the case may be;

shall be deemed to have been on active duty for training or inactive duty training, as the case may be, at the time such injury was incurred. \* \* \*"

No such language appears in section 6148 of Title 10.

The Judge Advocate General of the Navy and the Comptroller General have both expressed the opinion that inactive duty training had not commenced until plaintiff was mustered in for training. These are the officials immediately in charge of the administration of this section. I do not think their interpretation of the statute should be set aside

unless it is clear that the language of the statute, etc., demands it. To say the least, it is not clear that Congress intended that a reservist should be compensated for an injury sustained before he reported for duty.

For these reasons I respectfully dissent.