UNITED STATES of America,
Appellant,

v.

William G. CARROLL, Appellee.

No. 18328.

United States Court of Appeals
Eighth Circuit.

Dec. 21, 1966.

Robert V. Zener, Atty., Dept. of Justice, Washington, D. C., for appellant. John W. Douglas, Asst. Atty. Gen., and Morton Hollander, Atty., Dept. of Justice, Washington, D. C., and also Richard D. FitzGibbon, Jr., U. S. Atty., St. Louis, Mo., were with him on the brief.

John J. Stewart, St. Louis, Mo., for appellee. Thomas P. Howe, St. Louis, Mo., was with him on the brief.

Before VOGEL, Chief Judge, MATTHES, Circuit Judge, and DUNCAN, Senior District Judge.

DUNCAN, Senior District Judge.

This appeal is from a judgment of the United States District Court for the Eastern District of Missouri awarding damages to the appellee for injuries sustained by him as the result of the crash of a military aircraft in which he was a passenger. The action was brought under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq.

At the time of the accident, plaintiff was a naval reservist traveling in uniform to a weekend drill with other members of his military unit. At trial, negligence was uncontested, and the amount of damages assessed by the District Court, $3,000.00, is not contested in this appeal. The sole question here presented is whether plaintiff's injuries were incurred, "incident to (military) service", within the meaning of Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), so as to preclude recovery against the United States under the Federal Tort Claims Act, *supra*. The relevant facts are not in dispute.

In December, 1957, plaintiff was stationed at Lambert Field near St. Louis, Missouri. At that time, the Naval Reserve program there closed and plaintiff's squadron combined with another unit to form a new squadron stationed at the Naval Air Station at Millington, Tennessee, which is approximately 230 miles from St. Louis. Plaintiff was required to attend a minimum number of drills there each year. Failure to fulfill this requirement would result in a reservist's name being placed upon the active status pool list, making him subject to call into active duty by the order of the President of the United States for a period of 45 days. 10 U.S.C. § 270.

Since plaintiff and most of the other men in the new squadron lived in the St. Louis area, the holding of drills one weekend a month presented a transportation problem. It was therefore decided to furnish the St. Louis personnel with free transportation, i. e., a military airlift utilizing naval aircraft manned by naval personnel on active duty. This airlift was started in January, 1958, and was still in operation in March, 1963, when the accident involving plaintiff occurred.

Personnel desiring to utilize the military airlift for any particular drill would notify the squadron operations officer in advance so that their names would be placed on the preliminary flight manifest. This was usually done at the drill held a month before the transportation was to be supplied, so that the Navy could provide an adequate number of aircraft. Failure to make a reservation did not preclude a member of the unit from being thus transported, if space was available, but he would then be on a "standby" basis.

On the evening of any scheduled drill, the reservists who had expressed their intention of utilizing the free air transportation to Millington, would report in full uniform to Lambert Field for a roll call. At this formation, normal military commands and courtesies were in force. Moreover, the reservists were required, under arrangements with the National Guard, whose facilities they used at Lambert Field, to police the grounds for any litter that might be dropped as a result of their gathering.

The members of plaintiff's unit were not required to use the free naval transportation facility thus provided, but could avail themselves of any other transportation facility, including private transportation, which they desired to use. Even after the roll call of the unit at Lambert Field, prior to boarding the plane, any

member of the unit was free to enter the aircraft, or not, as he chose. Upon once entering the plane, however, the reservists were under the command of the naval officers in charge of the plane. After the arrival of the plane at the Millington Naval Air Station, any member of the unit was free to attend the drill, or not, as he chose, subject to such penalties as might be imposed for his non-attendance.

On the night of the accident, March 15, 1963, plaintiff had orders to report to Millington at 8:30 P.M. for a training class. This drill was an "increment drill", not required as a condition of membership in the reserve squadron, but the men who attended were paid for the drill and credited with retirement points. The crash occurred on non-government property as the naval aircraft on which plaintiff was a passenger approached for a landing at Millington. After the accident, plaintiff was taken to the Naval Hospital at Millington where he was hospitalized for four weeks as a military patient. He received drill pay for the night of the accident and for the ensuing weekend, and subsequently, applied for and received Veterans Administration benefits based on his injuries.

In the action below, the United States admitted negligence and also that the unit, plane and crew were in the exclusive control of the United States. It was also admitted that the crew was acting within the scope of their authority at the time of the accident. The sole defense was that plaintiff's military status at the time of the accident precluded an action under the Federal Tort Claims Act, *supra*, under the doctrine of Feres v. United States, supra. The District Court rejected this defense.

■ The general rule governing the liability of the United States to servicemen under the Federal Tort Claims Act, supra, under which the present action was brought, was stated in Feres v. United States, supra at 146, 71 S.Ct. at 159. There the Supreme Court said:

"We conclude that the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where injuries arise *out of or are in the course of activity incident to service*." (Emphasis supplied).

The *Feres* case involved three Tort Claims Act suits for damages involving injury or death of servicemen. None of these suits involved men who were actually performing military duties at the time of injury or death; in one case, the serviceman died in a fire at the barracks where he was quartered; in the other two cases, the men were injured by allegedly negligent medical treatment at military hospitals. In all three cases, it was held that the injuries were "incident to service."

■ There is no doubt that the *Feres* decision applies also to reservists. O'Brien v. United States, 192 F.2d 948 (8 Cir., 1951); Layne v. United States, 295 F.2d 433 (7 Cir., 1961), cert. den., 368 U.S. 990, 82 S.Ct. 605, 7 L.Ed.2d 527; Drumgoole v. Virginia Electric & Power Company, 170 F.Supp. 824 (E.D.Va., 1959). Indeed, in every case subsequent to *Feres*, involving the Government's liability to servicemen under the Federal Tort Claims Act, *supra*, the determinative issue has been whether the injuries "arise out of or are in the course of activity incident to service."

■ Moreover, it is clear that the *Feres* case, itself, as well as subsequent decisions demonstrate that the "activity incident to service" test thus used to interpret the exclusionary provisions of the Federal Tort Claims Act, *supra*, under which the present suit was brought, is much broader than the requirements under 10 U.S.C. § 6148, which provides benefits for Naval Reservists ordered to perform inactive duty training who are "disabled in line of duty from injury while so employed". See e. g., Callaway v. Garber, 289 F.2d 171, 173 (9 Cir. 1961), cert. den. 368 U.S. 874, 82 S.Ct. 120, 7 L.Ed.2d 76; Layne v. United States, 295 F.2d 433, 434–435, (7 Cir., 1961), cert. den., 368 U.S. 990, 82 S.Ct. 605, 7 L.Ed.2d 527; Zoula v. United States, 217 F.2d 81 (5 Cir., 1954); United States v. United Services Automobile

Ass'n, 238 F.2d 364 (8 Cir., 1956); Chambers v. United States, 357 F.2d 224 (8 Cir., 1966). The latter decision, at 229 for example, held that a serviceman was covered by the *Feres* doctrine "(e)ven though he might have had a furlough order in his pocket or might have been engaged in swimming for recreation".

■ In all of these cases, the crucial question which determined liability of the Government under the Federal Tort Claims Act, *supra*, was not whether the serviceman was acting pursuant to orders at the time of the accident, but rather whether "[t]he peculiar and special relationship of the soldier to his superiors" was in effect at the time of the accident. See United States v. Brown, 348 U.S. 110, 112, 75 S.Ct. 141, 143, 99 L.Ed. 139 (1954). In this case, the Supreme Court further explained the *Feres* decision in the following way, at 112, 75 S.Ct. at 143:

> "The peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty, led the Court to read that Act as excluding claims of that character."

■ The foregoing precedents and policy considerations compel our conclusion that upon the facts of this case, the appellee comes within the scope of the *Feres* doctrine which prevents a serviceman engaged in "activity incident to (military) service" at the time injuries are incurred from recovering against the United States under the Federal Tort Claims Act, *supra*. We find the following factors to be significant, in this regard, in the present instance, but in nowise imply that all are required to bring any particular case within the purview of the *Feres* doctrine:

(1) Plaintiff was travelling by military transportation,

(2) to a military reserve drill,

(3) in uniform,

(4) subject to military courtesies and discipline.

A significant element in the District Court's view was the fact that plaintiff's orders merely required that he arrive at Millington without specifying the mode of transportation, thus leaving him free to travel by whatever mode he chose. In our opinion, this ignores the numerous cases which have applied the *Feres* doctrine where servicemen on leave who were free to travel at their will by any mode of transportation they desired, chose to utilize military aircraft. See, e. g., Archer v. United States, 217 F.2d 548, (9 Cir., 1954); Fass v. United States, 191 F.Supp. 367, (E.D.N.Y.1961); Homlitas v. United States, 202 F.Supp. 520 (D.Or., 1962). The court's language in *Homlitas* at 523, is particularly applicable to the situation here presented:

> "While decedent Young, in the present case, could have used his own automobile or any other method of transportation he desired, he elected to use a method of transportation which was directly connected with and was incident to his military service."

Likewise, in the present instance, the fact that plaintiff voluntarily entered into the military relationship does not negate the fact that, when the accident occurred, the military relationship was in effect.

It is also clear that the fact that plaintiff was not acting under orders at the time of the accident, but was at liberty to go where he pleased, does not remove him from the scope of the *Feres* doctrine. See, e. g., Chambers v. United States, supra; Zoula v. United States, 217 F.2d 81, (5 Cir., 1954); Orken v. United States, 239 F.2d 850, (6 Cir., 1956); Gursley v. United States, 232 F.Supp. 614, (D.Colo., 1964); Ritzman v. Trent, 125 F.Supp. 664, 665 (E.D.N.C., 1954).

Finally, we feel that Meister v. United States, 319 F.2d 875, 162 Ct.Cl. 667 (1963), upon which the District Court based its decision in the present case,

is not determinative of the question of the Government's liability here.

In the *Meister* case, the plaintiff was also a member of a reserve unit. On the evening of his injury, as he was responding to orders to report for a particular drill, he arrived on Government premises in his own automobile, parked in a public parking place, entered the premises where the drill was to take place, and while walking along the sidewalk there, fell and broke his ankle. Action was brought in the United States Court of Claims to recover medical expenses, under 10 U.S.C. § 6148(a), which provides benefits for Naval Reservists ordered to perform inactive duty training (weekend or evening drills) who are "disabled in line of duty from injury while so employed". The Court of Claims rejected the contention that 10 U.S.C. § 6148(a) applies only to "injuries incurred between the time of muster and the time of dismissal", and ruled that the plaintiff was injured "while so employed" in inactive duty training, despite the fact that the drill had not formally commenced by the holding of a muster. It was therefore held that plaintiff was entitled to recover under 10 U.S.C. § 6148(a).

The District Court held that *Meister* compels a conclusion in the present case that plaintiff was not engaged in "activity incident to service" at the time of the accident because he was not actually at the drill to which he had been ordered and had not been formally mustered in. We do not agree.

In the first place, the *Meister* case was brought under 10 U.S.C. § 6148(a), whereas, the instant action was brought under the Federal Tort Claims Act, *supra*. As indicated above, the latter statute has consistently been construed to be broader in scope than the former. Indeed, the exclusionary provisions of the Federal Tort Claims Act, *supra*, as interpreted by the United States Supreme Court in Feres v. United States, supra, provide for the exclusion of claims for injuries which "arise out of or are in the course of activity incident to service". This test is, on its face, a much broader

one than provided in 10 U.S.C. § 6148(a), which, as heretofore stated, provides benefits for naval reservists who are "disabled in line of duty from injury while so employed". See, e. g., Callaway v. Garber, supra; United States v. United Services Automobile Ass'n, supra; Layne v. United States, supra; Zoula v. United States, supra; Chambers v. United States, supra.

Moreover, we hold that *Meister* does not limit actions by servicemen under the Federal Tort Claims Act, *supra*, to situations where servicemen are injured or killed on the premises of their base or where they otherwise are ordered to report. Besides the fact that *Meister* was brought under a narrower statute than in the instant case, there are numerous decisions which hold that servicemen may not recover under the *Feres* doctrine in actions brought under the Federal Tort Claims Act, *supra*, where, as here, injuries are incurred by servicemen while traveling voluntarily and gratuitously to or from their bases, but not actually on the base. In Archer v. United States, supra, for example, it was held that a West Point cadet was within the *Feres* doctrine when he was killed while riding voluntarily and gratuitously in a military aircraft on his way back to West Point. His parents were thus unable to sustain a death action against the United States under the Federal Tort Claims Act, *supra*. See also, Fass v. United States, supra; Homlitas v. United States, supra. Thus the difference in location of the injury in *Meister* and the case at bar can hardly be considered significant, especially in light of the very broad language of the *Feres* doctrine which interprets the Federal Tort Claims Act, *supra*, under which the present case was brought.

Upon analysis of the *Meister* decision, it is reasonable to assume that had the plaintiff there brought his action under the Federal Tort Claims Act, *supra*, instead of 10 U.S.C. § 6148(a), the court's determination that he was "disabled in line of duty from injury while so employed", would have precluded his re-

covery. Applying the same reasoning here, it would seem that the holding in *Meister* places this appellee in the same category and should also prevent his recovery.

In light of the foregoing, we hold that plaintiff cannot recover damages for injuries from the United States under the Federal Tort Claims Act, *supra*, because at the time he was injured he was engaged in "activity incident to (military) service", and is therefore, within the scope of the *Feres* doctrine.

Reversed.