**James H. VASON**

v.

**UNITED STATES of America.**

**Civ. A. No. 17290.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Aug. 23, 1973.

Robert R. Smith of Poole, Pearce, Cooper & Smith, Atlanta, Ga., for plaintiff.

John W. Stokes, U. S. Atty., Beverly B. Bates, Asst. U. S. Atty., Atlanta, Ga., for defendant.

## ORDER

EDENFIELD, District Judge.

A hearing was held in the above-captioned case on the parties' respective motions for summary judgment. On the basis of the facts and findings of law set forth below, the court holds that judgment must be entered for defendant.

Plaintiff is a Major in the Air Force Ready Reserve (not on extended active duty), assigned to the 918th Tactical Airlift Squadron (Air Force Reserve), Dobbins Air Force Base, Georgia. Major Vason has been in the Air Force Reserve for seventeen years and holds an aeronautical rating of pilot. In early May plaintiff received orders that he was to report for active duty to Dyess Air Force Base, Texas, for a period of "10 days plus travel time." The orders stated that he was to report to Dyess no later than 0800 hours on May 22, 1972, and that he would be released from active duty on May 31, 1972. The orders indicated further that he was authorized to travel to his duty station by either military or commercial aircraft.

The ten days' active duty comprised the first period of training of a five-week advanced flying course. As originally planned, Major Vason would attend the first session of the course, return to his civilian job in Atlanta for three weeks, and then go back to Dyess for the remaining three weeks. In informal briefings with the unit training officer and conversations with his fellow reservists, Major Vason was advised of the need for private transportation at Dyess and was encouraged to take his own automobile. Having received what he considered to be assurances that he was authorized to travel by car, and that he would be paid for active duty time in

coming and going to Dyess, Major Vason decided to drive, rather than travel by air.

On the morning of May 20, 1972, Vason signed out of his unit at Dobbins Air Force Base, preparatory to starting his trip to Dyess, and stopped by his house to finish his final packing. While loading luggage into his automobile plaintiff suffered a heart attack. The attack caused him to be hospitalized for two weeks and required a convalescence period at his home for some two months. Shortly after being stricken, Major Vason contacted his unit and requested that the Air Force assume responsibility for his hospitalization and continue his pay and allowance while he remained disabled. He was informed by his commanding officer, and subsequently by the Department of the Air Force, that he was not considered to have been on active duty at the time the attack occurred and consequently was not entitled to any benefits associated with active duty status.

■ The sole issue to be decided in this case is whether plaintiff was on active duty at the time he suffered the heart attack. The government's argument, based on plaintiff's orders and the applicable travel regulations, proceeds as follows. By the express terms of plaintiff's orders, Reserve Order No. 931, plaintiff was ordered to active duty on May 22, 1972, for "10 days plus required travel time." The amount of travel time authorized is set forth in "Department of Defense Military Pay and Allowances Entitlements Manual," Chapter 2, Section E, "Allowable Travel Time for Reserve Members on Call to or Release from Active Duty," and provides in Table 1–2–4 that when a reservist is ordered to active duty for a period of thirty days or less, and travel by air is authorized and reasonably available, that not more than one day travel time is allowed, subject to certain minor exceptions not here relevant. There being no dispute that air travel was reasonably available, plaintiff was therefore authorized one day travel time to reach Dyess

AFB, and consequently could not have commenced active duty until May 21st.[1]

Plaintiff's argument to the contrary, that he should be treated as if he were on active duty, notwithstanding the express language of his orders and the regulations, is based on essentially two grounds. First, plaintiff argues that the total length of the flight school he was ordered to attend was for five weeks, and that the court should therefore regard plaintiff's effective period of active duty as encompassing thirty-five days, rather than the ten as stated on his orders. Under the regulations, treating plaintiff's assignment to active duty as being for over thirty days would have entitled plaintiff to travel time computed as if actually performed by public surface transportation, and plaintiff's departure on May 20th would have thus placed him within the authorized active duty period. The fact that the five-week school was broken up into two segments of two weeks and three weeks apiece, plaintiff argues, should not defeat plaintiff's claim that he was obligated to be on active duty for a thirty-five day period.

Second, plaintiff argues that the language in his orders, "active duty for 10 days plus required travel time", authorized him to take a reasonable amount of time to reach Dyess AFB by private automobile, the method of transport which he was encouraged to use by the unit training officer. Since Dyess AFB was 950 miles from plaintiff's home, and since he and other reservists had been told that it was necessary to have a car, plaintiff concludes that the trip by automobile would take at least two days, and that therefore, counting the additional day of travel time, he commenced active duty when he signed out of his unit at Dobbins AFB on Saturday, May 20th.

In support of both these arguments, plaintiff advances the proposition that the court need not consider as conclusive the express language in the relevant orders and travel regulations. In support of this proposition plaintiff relies on two cases, neither of which are particularly apposite to the specific issue presently before the court.

In Meister v. United States, 319 F.2d 875, 162 Ct.Cl. 667 (1963), the plaintiff naval reserve officer received an order directing him to report for inactive duty training at his training center, no later than 1920 hours. As the plaintiff walked through a gate toward the door of the center, he slipped on an icy sidewalk and fractured his ankle. The Department of the Navy determined that the plaintiff was not entitled to compensation for his medical expenses or continued pay and allowances, under the relevant portion of 10 U.S.C. § 6148(a), which reads as follows: "A member of the Naval Reserve, . . . who is ordered to active duty, or to perform inactive-duty training, for any period of time, *and* is *disabled in line of duty from injury while so employed,* . . . is entitled to the same pension, compensation, death gratuity, hospital benefits, and pay and allowances as are provided by law or regulation in the case of a member of the Regular Navy . . . ." Finding that it was not compelled to construe the language of the statute narrowly, the Court of Claims held that plaintiff was entitled to the relief sought. The court noted that the term "while so employed" was susceptible of more than one interpretation, and that a previous decision established that the court should bring the plaintiff within the meaning of the statute if it could do so "without doing violence to the language."

The court's decision in *Meister* was rendered in a situation where the court found in the applicable regulations no guidance as to when inactive duty train-

---

1. Footnote 1 to Table 1–2–4 further provides that "Travel is not expected to start or end between midnight and 0600." Consequently, plaintiff technically could not have been in active duty status before 6:00 A.M. on May 21st.

ing began, or as to the length of time allowed in reporting for inactive duty training. In the present case, the court is left with no room for interpretation on the question of whether Major Vason was on active duty at the time he suffered the heart attack. His orders specifically read, "ordered to active duty for ten days [not 35 days] plus travel time," and the allowable travel time is unambiguously set forth in the Department of Defense Manual, as being one day.

A similar answer must be given to plaintiff's reliance on Remaley v. United States, 139 F.Supp. 956, 134 Ct.Cl. 874 (1956). In that case, plaintiff was an Army reserve officer who had been ordered to active duty to teach a course at the Command and General Staff School. While teaching at the school, plaintiff suffered a heart attack. Under the statutes then in effect, whether plaintiff was entitled to retirement and disability pay depended upon whether he was on "active service" or "active duty for training." Although the standard form orders issued to plaintiff assigned him to "active duty for training" the court found that, in fact, plaintiff was not undergoing training, but to the contrary was himself providing instruction.

Analogizing his case to that of *Remaley*, plaintiff here asks the court to look beyond the formal determinants of "active duty status" to the fact that on the morning of the attack plaintiff had signed out of his unit and was preparing to travel to his new duty station. Intending to drive to Dyess and reasonably believing himself to be on active duty, plaintiff argues that he should be treated as if he were on active duty, just as the plaintiff in *Remaley* was found to be on "active service", even though his orders defined his status as "active duty for training." Plaintiff's contention

cannot be sustained. Unlike the question of whether a man is being trained or is teaching, the question of whether a reservist is on "active duty" cannot be answered by looking at observable phenomena.

"Active duty" in this situation is a descriptive term used by the Air Force to define the existence of a state of being carrying with it certain rights and responsibilities. Since it is the Air Force in this case which invests "active duty" with whatever practical consequences that term embodies, whether the status of "active duty" has been obtained in fact depends on whether the definitional preconditions established by the Air Force have been met. Accordingly, in deciding whether plaintiff was on active duty, the court must look to plaintiff's orders and the applicable regulations.[2] As previously stated these clearly indicate that he was not on active duty at the time the attack occurred.

■■■ In an appropriate case, failure to satisfy formal requirements defining a particular status will not bar a plaintiff from availing himself of that status where those requirements have been waived or modified by the defendant. Where an insurance company, for example, represents to an insured that he has a grace period of an additional ten days for payment of the premium, the company may be hard put to terminate the policy when the premium is not received on the due date contained in the policy. In the present case, plaintiff's counsel has argued generally that the court should find Major Vason to be on active duty status because of the assurances he had received from the unit training officer and fellow reservists, that travel by private car was authorized and that he would be paid for two days' travel time.

---

2. The amount of discretion that the court has in deciding whether plaintiff in this case was on "active duty" is roughly analogous to the latitude enjoyed by the court in deter-

mining whether a creditor is a "holder in due course" under the UCC. In both cases, the court is bound to apply the applicable statutory definitions.

In fact, while travel by automobile was allowed, two days' travel pay was not authorized, because the applicable regulations provided that only one day travel time was permitted in reaching the duty station assigned.

■■ It is well settled that "persons dealing with the government must take notice of the extent of the authority it has given its agents," Thomas Bros. v. United States, 127 F.Supp. 754, 757 (N.D.Ga.1954), and that the government "is not bound by the unauthorized or incorrect statements of its agents." Posey v. United States, 449 F.2d 228, 234 (5th Cir. 1971). There has been sound criticism of the rule that the "government cannot be estopped" where the government engages in activities like those of private parties. See 2 K. Davis, Administrative Law Treatise §§ 17.01–17.05. Where the government's interest is in maintaining the integrity of regulations affecting the status of large numbers of people, and in enforcing those regulations evenly, however, the rule has a sound basis in public policy. See 2 Davis, supra, § 17.04 at 511. In the present case, obviously serious problems would be posed for effective administration of the Air Force Reserve were each unit allowed to define for itself the necessary preconditions for placing its members in active duty status. Any argument plaintiff asserts based on reasonable reliance must therefore fail.

The court sympathizes with the plight of Major Vason who considered himself justified in relying on the informal briefings of his unit. If, under the law, the court could order compensation for the disability suffered by a veteran of seventeen years, it would do so. Neither the applicable orders and regulations nor the very limited exceptions to the rule that the government cannot be estopped, however, will permit the court to find for the plaintiff. Accordingly, there being no genuine issue of material fact, the government's motion for summary judgment is granted.